**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CORRIE LEA M. FEY,** | § | |
| **KELVIN H. KRAMM, and** | § | |
| **MICHAEL C. KRAMM,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | **CIVIL ACTION NO. 5:21-cv-01090** |
| **v.** | § | |
| | § | |
| **THE CITY OF NEW BRAUNFELS,** | § | |
| **TEXAS,** | § | |
| | § | |
| *Defendant*. | § | |

<u>**NOTICE OF REMOVAL OF DEFENDANT**</u>

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

NOW COMES Defendant, the City of New Braunfels, Texas (the City) and files this notice of removal.  As grounds for removal, the City states the following:

**1.**

**STATE COURT LITIGATION**

1.01.  The City is the sole defendant in a case styled *Corrie Lea M. Fey, Kelvin H. Kramm, and Michael C. Kramm v. The City of New Braunfels, Texas*, which bears Cause No. C2021-1371A, and is pending in the 22nd Judicial District of Comal County, Texas (the state court litigation) located at 150 North Seguin Avenue, Suite 3086, New Braunfels, Texas, 78130, before the Honorable Bruce Boyer.

---

**2.**

**ATTACHMENTS**

2.01.   A true and correct copy of: (1) all pleadings that assert causes of action; (2) all answers to such pleadings; (3) all process served on Defendant; and (4) all orders served on Defendant are being filed with this notice as required by Title 28, U.S.C., Section 1446(a), are attached to this notice.

**3.**

**TIMELINESS OF REMOVAL**

3.01.   The state court litigation commenced on August 25, 2021, with the filing of Plaintiffs' Original Petition, which includes, as set forth below, claims under federal law.  The City was not served with the petition and citation until October 7, 2021.  Thus, this notice of removal is timely filed under section 1446(b) within thirty (30) days of receipt and service of the initial pleading setting forth the claims for relief over which this Court has jurisdiction.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 348, 119 S. Ct. 1322, 1325-26 (1999).

**4.**

**GROUNDS FOR REMOVAL**

4.01.    Within the meaning of Title 28, U.S.C., Section 1446(b), Plaintiffs' Original Petition, which is attached, raises claims from which the City was first able to ascertain that this case is one which is removable.  Specifically, Plaintiffs have asserted, expressly in paragraphs 24, 29, 40, and the prayer of Plaintiffs' Original Petition, causes of action for violations of Plaintiff's Fifth and Fourteenth Amendment Rights to the United States Constitution.  *See* Pl.s' Orig. Pet. at 6, 8, 10, 12.  Plaintiffs allege violations of the Takings Clause of the Fifth Amendment to the U.S. Constitution applicable to the City through the Fourteenth Amendment.  Specifically, Plaintiffs

allege an exactions-type takings claim under

4.02.    Under federal law, federal courts have original jurisdiction over all civil actions "arising under the Constitution, laws or treaties of the United States."  28 U.S.C. §§ 1331, 1441(b). The Plaintiffs' petition thus includes claims over which this Court has original jurisdiction pursuant to Title 28, U.S.C., Section 1331, and may be removed to this Court by the City under to Title 28, U.S.C., Section 1441(b).

**5.**

**VENUE**

5.01.  Venue of the state court litigation lies in Comal County, Texas.  Therefore, this action must be removed to this Court as the district and division embracing the place where the state action is pending, pursuant to 42 U.S.C. § 1446(a).  28 U.S.C. § 124(d)(4).

**6.**

**NOTICE TO PARTIES AND STATE COURT**

6.01.  Upon the filing of this Notice with the Federal District Court, the City will give notice of this filing to Plaintiffs, and will also file a copy of this Notice with the Clerk of the 22nd District Court of the State of Texas, Comal County, where the action is currently pending pursuant to Title 28, U.S.C., Section 1446(d).

WHEREFORE, the City prays that the above-entitled action be removed from the 22nd District Court of Comal County, Texas, to this Honorable Court.

Respectfully submitted,

William M. "Mick" McKamie
mmckamie@toase.com
Texas Bar No. 136868001

**Taylor, Olson, Adkins, Sralla, & Elam, L.L.P.**
401 East Sonterra Boulevard, Suite 375
San Antonio, Texas 78258
Phone: 210-510-4146
Fax: 817-332-4740

Fredrick "Fritz" Quast
fquast@toase.com
Texas Bar No. 24032974

Lindsey Hale
lhale@toase.com
Texas Bar No. 24096435

**Taylor, Olson, Adkins, Sralla, & Elam, L.L.P.**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Tel: (817) 332-2580
Fax: (817) 332-4740

**ATTORNEYS FOR DEFENDANT,
THE CITY OF NEW BRAUNFELS, TEXAS**

## CERTIFICATE OF SERVICE

On November 5, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

John McClish
email:  john@bhlawgroup.com
Zachary S. Brady
email:  zach@bhlawgroup.com
Laura W. Pratt
email:  laura@bhlawgroup.com
Brady & Hamilton Womack McClish
805 East 32nd Street, Suite 200
Austin, Texas 78705

_____
Fredrick "Fritz" Quast

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CORRIE LEA M. FEY,** | § | |
| **KELVIN H. KRAMM, and** | § | |
| **MICHAEL C. KRAMM,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | |
| **THE CITY OF NEW BRAUNFELS,** | § | |
| **TEXAS,** | § | |
| | § | |
| *Defendant*. | § | |

<u>**APPENDIX TO DEFENDANT'S NOTICE OF REMOVAL**</u>

| Date | Description | Ex |
|---|---|---|
| | | |
| 08/25/2021 | Plaintiffs' Original Petition [Cause No. C2021-1371A] | A |
| 10/07/2021 | Citation served on Defendant City of New Braunfels, Texas | B |
| 10/14/2021 | File Stamped Return of Service by Certified Mail, Return Receipt Requested | C |
| 11/01/2021 | Defendant's Original Answer | D |
| | | |
| | | |
| | | |
| | | |
| | | |

1

# EXHIBIT "A"

FILED
C2021-1371A
8/25/2021 12:44 PM
Heather N. Kellar
Comal County
District Clerk
Accepted By:
Shawna Frakes

CAUSE NO. _____  C2021-1371A

| | | |
|---|---|---|
| **CORRIE LEA M. FEY, KELVIN H. KRAMM, AND MICHAEL C. KRAMM** | § | **IN THE \_\_\_\_\_ DISTRICT COURT** |
| | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **v.** | § | **OF** |
| | § | |
| **THE CITY OF NEW BRAUNFELS, TEXAS,** | § | |
| | § | |
| **DEFENDANT.** | § | **COMAL COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Corrie Lea M. Fey, Kelvin H. Kramm, and Michael C. Kramm (collectively referred to as "Plaintiffs") and file this Plaintiffs' Original Petition, complaining of the City of New Braunfels (the "City") in Comal County, Texas, and in support hereof would respectfully show unto the Court the following:

### I. DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

1.    Plaintiffs intend that discovery be conducted under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure. Per Texas Rule of Civil Procedure 47, and subject to changes in circumstances, Plaintiffs seek non-monetary relief including declaratory relief, as well as monetary relief over $1,000,000.

### II. PARTIES

2.    The Plaintiffs are siblings who inherited from their parents a 25.641-acre tract of land located at 1890 F.M. 1044, New Braunfels, Comal County, Texas (the "Property"). The Plaintiffs may be served with pleadings and process by service on undersigned counsel. The Plaintiffs' addresses are set out as follows:

Exhibit A

Corrie Lea M. Fey
2681 CR 420
Stockdale, TX 78160

Kelvin H. Kramm
272 Kove Lane
Cibolo, TX 78108

Michael C. Kramm
P.O. Box 785
Marble Falls, TX 78654

3.      The Defendant is the City of New Braunfels, Texas, an incorporated, home rule municipality and political subdivision of the State of Texas, which has its business office in Comal County. Pursuant to Section 17.024(b) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, the City may be served with process in this case by delivering a copy of this petition to the Mayor of the City of New Braunfels, Rusty Brockman, at 550 Landa Street, New Braunfels, Texas 78130.

4.      The City is not immune from suit or liability as detailed below.

### III.      JURISDICTION AND VENUE

5.      The Court has personal jurisdiction over the Defendant, a home rule municipality and political subdivision of the State of Texas, which has its business office in Comal County.

6.      This Court has subject matter jurisdiction because the amount in controversy is in excess of the minimum jurisdictional limits of this Court and because the Court has been granted jurisdiction under several different statutory provisions. A person whose rights, status, or other legal relations are affected by a municipal ordinance can petition and request the court determine questions of construction or validity pertaining to or arising under such under the UNIFORM DECLARATORY JUDGMENT ACT[1]. Also, a developer may appeal a City's decision regarding the apportionment of municipal costs to a district court pursuant to TEXAS LOCAL GOVERNMENT CODE

---

[1] TEX. CIV. PRAC. & REM. CODE, Chapter 37.

§ 212.904(c). District courts have subject matter jurisdiction over claims brought under the TEXAS

PRIVATE REAL PROPERTY RIGHTS PRESERVATION ACT[2] (the "PRPA").[3]

7.      Venue is proper in Comal County, Texas, pursuant to TEXAS CIVIL PRACTICE AND

REMEDIES CODE § 15.002(a)(1), because all or a substantial part of the events or omissions giving

rise to the claims asserted herein occurred in Comal County, and TEXAS CIVIL PRACTICE AND

REMEDIES CODE § 15.002(a)(2), because Comal County is the county of Defendant's residence or

principal place of business at the time the cause of action accrued.

8.      Immunity has been waived under the UNIFORM DECLARATORY JUDGMENT ACT[4],

the TEXAS CONSTITUTION, Article 1, Sections 17 and 19, and the PRPA[5].

## IV.      BACKGROUND FACTS

9.      In the late summer of 2018, the Plaintiffs decided to put the Property on the market

for sale.

10.      On September 15, 2018, ECS Development, LLC (the "Buyer") placed the

Property under contract for $1,000,000.00, subject to a feasibility review. A true and correct copy

of this contract is attached as **Exhibit A**.

11.      The Buyer obtained a preliminary development plan for the Property which was

submitted to the City for review. At the pre-development meeting with the City, the Buyer learned

that any development of the Property would require compliance with the 2012 Regional

Transportation Plan[6] (the "Transportation Plan") adopted by the City on or about March 12, 2012.

---

[2] *See generally,* TEX. GOV'T CODE, Chapter 2007.
[3] TEX. GOV'T CODE § 2007.021 (2021); the [Private Real Property Rights Preservation] Act unquestionably vests district courts with subject matter jurisdiction to hear claims brought under the statute. *City of Houston v. Guthrie,* 332 S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2009).
[4] TEX. CIV. PRAC. & REM. CODE § 37.002(b).
[5] TEX. GOV'T CODE § 2007.003(a).
[6] *See* REGIONAL TRANSPORTATION, City of New Braunfels, https://www.nbtexas.org/1248/Regional-Transportation (last visited August 25, 2021).

12.     Compliance with this plan would require dedication of almost six acres of right of way to the City and require that the developers spend a substantial sum of money to build a significant part of the thoroughfare proposed. The Buyer also learned that because of the location of the thoroughfare required by the City, the Property would be severed into three segments and that a significant portion of its development potential would be lost. A copy of the proposed development plan with the proposed thoroughfare superimposed is attached as **Exhibit B**.

13.     After this pre-development meeting with the city and upon learning of these strict municipal infrastructure costs and development conditions, the Buyer immediately terminated the contract with the Plaintiffs.

14.     On January 17, 2019, the Plaintiffs and their counsel met with the City to initiate a request for an amendment to the Transportation Plan which would reduce or eliminate the burden placed on the Property by the City's ordinance. At the close of the meeting, the City indicated it was unwilling to remove the Property from the Transportation Plan or to waive the requirements of dedication of right-of-way and cash participation in the cost of building the roadways on the Property.

15.     After completing the informal process, Plaintiffs filed a formal application to remove the Property from the Transportation Plan. City staff then notified Plaintiffs that their formal application to exempt the Property from its inclusion in the Transportation Plan would be considered by City Council. A copy of this notification is attached as **Exhibit C**.

16.     Concurrently with the exemption request, the apportionment of municipal infrastructure costs for the development of the Property were discussed with the City. To obtain permits to develop the Property for any use, City ordinances require the Plaintiffs to give the City almost one-fourth of the Property as right-of-way. Plaintiffs must also pay significant amounts of

money to build a portion of a minor arterial roadway through the Property in a location decided by the City several years ago. The Plaintiffs subsequently obtained the engineering information necessary to submit a formal request that the Property be exempted from the Transportation Plan. Plaintiffs also demanded a finding of rough proportionality as authorized by TEXAS LOCAL GOVERNMENT CODE § 212.904.

17.     The City Planning Commission and the City Engineer determined that the exactions involved were, in fact, "roughly proportional" to the increased demand on public services caused by the Plaintiffs' proposed development. The City's engineering report supporting its determination of rough proportionality is attached as **Exhibit D**.

18.     Both the exemption and the Plaintiffs' appeal were considered by the City Council of the City of New Braunfels (the "City Council") on June 28, 2021. A copy of this agenda is attached as **Exhibit E**. The City Council denied the Plaintiffs' request to exempt the Property from the Transportation Plan and approved the City's engineering report supporting the determination of rough proportionality.

19.     At a later meeting, the City Council considered Plaintiffs' appeal on the apportionment of the municipal infrastructure costs for the development of the Property. The City Council denied the Plaintiffs' appeal on the apportionment of July 26, 2021. A copy of the minutes from this meeting is attached as **Exhibit F**.

20.     As required by TEXAS LOCAL GOVERNMENT CODE § 212.904(c), this lawsuit is filed within thirty (30) days after the final decision of the City Council.

## V.     UNIFORM DECLARATORY JUDGMENT ACT

21.     Plaintiffs incorporate paragraphs 1 through 20 as if fully set out herein.

22.    The UNIFORM DECLARATORY JUDGMENT ACT (the "Act") is remedial in nature and was implemented to provide courts with broad discretion and authority to make determinations, so as to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." TEX. CIV. PRAC. & REM. CODE § 37.002(b); *see also Id.* at § 37.003(a).

23.    When such uncertainties arise with respect to a municipal ordinance, a person whose rights, status, or other legal relations are affected by such municipal ordinance can petition and request the court determine questions of construction or validity pertaining to or arising under such ordinance. *Id.* at § 37.004(a). The person may then obtain a declaration from the court setting out its determinations. *Id.* Such determination can be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree. *Id.* at § 37.003(b). "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." *Id.* at § 37.011. If a court deems such application to be sufficient, such court may require an interested party to demonstrate why relief should not be granted. *Id.*

24.    Pursuant to the Act, Plaintiffs request this Court make determinations to settle the following questions:

- Whether the City's actions violate the Fifth and Fourteenth Amendments to the UNITED STATES CONSTITUTION or Section 17 or 19, Article I, of the TEXAS CONSTITUTION.

- Whether the City complied with the PRPA[7] in enacting its Transportation Plan.

- Whether the City complied with the Property Rights Preservation Act in making its final determination refusing to remove the Property from the Transportation Plan.

---

[7] Texas Government Code, Chapter 2007.

- Whether the City complied with the Property Rights Preservation Act in denying the Plaintiffs' appeal regarding apportionment of costs.

- Whether the City has imposed a burden on private real property, which creates a disproportionate diminution in economic value or renders the Property wholly useless.

- Whether the City Council's determination against the Plaintiffs' real property interest is for its own advantage.

- Whether the City Council's determination constitutes an unreasonable and direct physical or legal restriction or interference with the Plaintiffs' right to use and enjoy the Property.

- Whether the City Council's determination is a constitutionally cognizable injury that results in diminished value of the Property.

- Whether the City Council's determination accords with substantive due process principles through a rational relationship to a legitimate governmental interest.

- Whether the City Council's final determination on the Property's inclusion in the City's Transportation Plan resulted in an exaction.

- Whether the City Council's denial of the Plaintiff's appeal regarding the apportionment of costs resulted in an inverse condemnation.

## VI.    CAUSES OF ACTION

**A.    Judicial Review of City Council's Determination**

25.    Plaintiffs incorporate paragraphs 1 through 24 as if fully set out herein.

26.     Plaintiffs are persons disputing the final determination of their appeal before the City Council. Pursuant to TEXAS LOCAL GOVERNMENT CODE § 212.904(c), Plaintiffs are seeking judicial review of the City Council's final determination made July 26, 2021.

27.     This petition has been filed with the Court within thirty (30) days after the date of the City Council's decision was issued.

28.     The City Council erred in its decision because the City is demanding that the Plaintiffs give up almost a fourth of their land and several hundred thousand dollars in construction costs, and the benefits to be obtained by the Plaintiffs from development approval from the City are not proportional to the costs of these development demands by the City.

29.     Such decision violates the Fifth and Fourteenth Amendments to the UNITED STATES CONSTITUTION, Article I, Section 17 or 19 of the TEXAS CONSTITUTION, and the Property Rights Preservation Act and would result in an exaction and/or a regulatory taking of the Plaintiffs' Property in violation of the law.

30.     For these reasons, Plaintiffs request that the court grant a judicial review the City Council's determination. Plaintiffs request that the Court hold a hearing and allow testimony for the proper disposition of this matter. Thereafter, Plaintiffs request that the Court reverse the decision of the City Council.

**B.     Exaction**

31.     Plaintiffs incorporate paragraphs 1 through 30 as if fully set out herein.

32.     In addition, and to the extent necessary, in the alternative, Plaintiffs sue the Defendant for exaction in violation of state and federal law.

33.     The City Council erred in its decision because the City is demanding that the Plaintiffs give up almost a fourth of their land and several hundred thousand dollars in construction

costs, and the benefits to be obtained by the Plaintiffs from development approval from the City are not proportional to the costs of these development demands by the City.

34.     This proof need not be made with mathematical certainty, but it must be analyzed on an individualized cost-benefit basis, based on the proposed development. This standard contains a chronological element, and the City must first analyze the impact of the proposed development and then fashion its dedication requirements accordingly. Here, the City's exaction of the Plaintiffs was decided many years before any development was even proposed for the Property, and it was tailored to the City's desire for a specific roadway through the Property, regardless of the proposed development.

35.     An exaction occurs when government requires a landowner to give land or money or both as a condition to the grant of one or more development permits. Because the owner must give up his property without the payment of compensation, constitutional concerns arise. There are serious issues with the City's calculation of rough proportionality, which could be considered "outright extortion".[8]

36.     This dispute began when the landowners contracted to sell their property for $1,000.000.00. The contract for sale was terminated because of the development requirements of the City. The City's subsequent engineering study concluded that the doctrine of rough proportionality would have allowed a City exaction of almost $1,000,000.00 in exchange for the development approval. In a subsequent reevaluation which considered only the development potential of the property after the dedication of right-of-way, this assessment was reduced to about $650,000.00. Either value represents a significant percentage of the total Property's value.

---

[8] The United States Supreme Court first used this terminology in *Nollan v. California Coastal Comm.*, 483 U.S. 825 (1987) to describe governmental conditions imposed without nexus to development.

Additionally, far from giving any benefit to Plaintiffs, the proposed roadway considerably reduces the value of the land that remains.

37.     The actions and decisions by the City constitute an illegal exaction, and Plaintiffs are entitled to relief from the illegal conditions imposed on their development.

**B.     Inverse Condemnation**

38.     Plaintiffs incorporate paragraphs 1 through 37 as if fully set out herein.

39.     In addition, and to the extent necessary, in the alternative, Plaintiffs sue the Defendant for inverse condemnation.

40.     The Property Rights Preservation Act, Section 2007.002(5) defines "taking" as:

    A.  a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the UNITED STATES CONSTITUTION or Section 17 or 19, Article I, TEXAS CONSTITUTION; or

    B.  a governmental action that:

        i.  affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

        ii. is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the property determined as if the governmental action is in effect.

41.     A physically non-intrusive governmental regulation or action that affects the value, use, or transfer of real property may constitute a taking if it goes too far without compensating the property owner.

42.     The City's actions, while physically non-intrusive, have a significant impact on the Plaintiffs' real property rights. As such, they constitute a taking of private real property requiring the payment of compensation.

43.     The actions and decisions by the City unreasonably interfere with Plaintiffs' use of its property, creates a severe economic impact, and deprive Plaintiffs of their reasonable expectations in the value of their land. The City Council's final determination constitutes inverse condemnation, and Plaintiffs are entitled to compensation for this taking.

C.      **Violation of the TEXAS PRIVATE REAL PROPERTY RIGHTS PRESERVATION ACT**

44.     Plaintiffs incorporate paragraphs 1 through 43 as if fully set out herein.

45.     In addition, and to the extent necessary, in the alternative, Plaintiffs sue the Defendant for violation of the TEXAS PRIVATE REAL PROPERTY RIGHTS PRESERVATION ACT ("PRPA").

46.     The PRPA requires governmental entities to utilize appropriate guidelines in evaluating and reviewing the potential impact of a proposed governmental action covered by the PRPA.

47.     Under the PRPA framework, the City was required to perform a specific analysis in order to safeguard the Plaintiffs' real property rights.

48.     No such analysis nor a takings impact assessment was performed to support the City's determination in this matter.

49.     Pursuant to TEXAS GOVERNMENT CODE § 2007.044, the City Council's final determination and the City's Transportation Plan should be declared invalid, and the actions of the City should be declared void.

## VII.   <u>ATTORNEYS' FEES</u>

As a result of the conduct of the City enumerated above, the Plaintiffs have been required to prepare and prosecute this action. Plaintiffs have met the legal conditions precedent to collection of attorneys' fees and therefore seeks reasonable and necessary attorneys' fees regarding this matter through the trial of this case and in the event of an appeal to the Court of Appeals and/or the Texas Supreme Court. Attorney's fees are proper under TEXAS CIVIL PRACTICE & REMEDIES CODE § 37.002(b), TEXAS GOVERNMENT CODE § 2007.004, and TEXAS LOCAL GOVERNMENT CODE § 212.904(c).

## VIII.   <u>DEMAND FOR JURY</u>

Plaintiffs hereby makes its demand for jury and tenders with the filing of these pleadings the necessary jury fee.

## IX.   <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court issue citation for Defendant to appear and answer, and, on final hearing, that Plaintiffs have judgment in favor of Plaintiffs and against Defendant as requested above, for just compensation as required by the U.S. CONSTITUTION and the TEXAS CONSTITUTION, and for any and all such other and further relief to which Plaintiffs are justly entitled.

Respectfully submitted,

BRADY & HAMILTON | WOMACK MCCLISH

By:      /s/ John McClish
         John McClish
         State Bar No. 13417000
         *john@bhlawgroup.com*
         Zachary S. Brady
         State Bar No. 24012320
         zach@bhlawgroup.com
         Laura A. W. Pratt
         State Bar No. 24072287
         *laura@bhlawgroup.com*
         805 E. 32nd Street, Suite 200
         Austin, Texas 78705 -2529
         Telephone:     (512) 474-9875
         Facsimile:     (512) 474-9894

         ATTORNEYS FOR PLAINTIFFS
         CORRIE LEA M. FEY, KELVIN H. KRAMM AND
         MICHAEL C. KRAMM

## CONTRACT OF SALE

THIS CONTRACT OF SALE (this "*Contract*") is made and entered into by and between **CORRIE LEA M. FEY, KELVIN H. KRAMM, and MICHAEL C. KRAMM** (collectively "*Seller*") and **ECS DEVELOPMENT, LLC  or Assigns** ("*Buyer*"). For and in consideration of the sum of Ten and No/100 Dollars ($10.00) and of the premises, undertakings, and mutual covenants of the Parties set forth in this Contract, Seller and Buyer agree to the terms and conditions of this Contract and covenant and agree as follows:

### I. SALE AND PURCHASE OF PROPERTY.

**1.01.   Agreement of Sale and Purchase.** Except as set forth below in Section 1.01.1, Seller hereby agrees to sell and convey unto Buyer, and Buyer hereby agrees to purchase from Seller the following Property for One Million and No/100 Dollars ($1,000,000.00) ("Purchase Price"):

> "All that certain tract or parcel of land situated in Comal County, Texas and being 25.61 acres of land out of the John Thompson Survey No. 21, Comal County, Texas, and being 25.641 acres of land out of that certain 28.0 acre tract of land conveyed by Erwin P. Henk to G.C. Binz, et ux, by deed dated August 27, 1968, and recorded in Volume 165 on pages 110-111 of the Deed Records of Comal County, Texas, and being the same property being conveyed to Henry O. Kramm by deed dated June 8, 2010, and recorded on June 11, 2010, in Document No. 201006019006 in the real property records of Comal County, Texas, and being more commonly known as 1890 FM 1044, New Braunfels, Texas 78130 (the "*Land*"). The Land, together with all improvements thereon and all and singular the rights and appurtenances pertaining thereto are sometimes referred to collectively as the "*Property*".

**1.01.1**     Seller reserves the right to remove any cattle pens, the green house, and such other structures or parts of the structures currently on the Land, on or before the Closing. Such items will be removed at Seller's sole cost and expense without any reduction in the Purchase Price.

**1.02.   Independent Consideration and Earnest Money.**

(a)   Independent Consideration.  In consideration of Seller's execution of this Contract and for the right to purchase the Land granted by Seller to Buyer, Buyer shall, within five (5) Business Days after the later of (i) the Effective Date or (ii) the date Seller provides to Buyer and Buyer's counsel Seller's tax identification number, deliver to Seller the sum of One Thousand and No/100 Dollars ($1,000.00) in cash (the "*Independent Consideration*"). The Independent Consideration shall be, under all circumstances, nonrefundable to Buyer.

(b)   Earnest Money.  Buyer shall, within ten (10) Business Days after the Effective Date, deposit with the Title Company the sum of Fifty Thousand and No/100 Dollars ($50,000.00) in the form of cash (the "*Earnest Money*"). Ninety (90) days after the execution of this agreement, Fifteen Thousand and No/100 Dollars ($15,000.00) of the Earnest Money shall be non-refundable to Buyer.  If this Contract is terminated by Buyer prior to the ninety (90) day period set forth in the prior sentence, all of the Earnest Money then on deposit shall be returned to Buyer by the Title Company, as elsewhere provided herein.  If the Contract is terminated by Buyer after the ninety (90) day period, Fifteen Thousand Dollars ($15,000.00) shall be

1



distributed to Seller and the remaining Earnest Money would then be returned to Buyer. The Title Company shall deposit and hold the Earnest Money in a federally-insured interest bearing account, or in such other investment.

(c)  Application of Earnest Money. At the Closing, the Earnest Money shall be applied by the Title Company as a credit to the Purchase Price of the Property.

(d)  Failure to Deposit. If Buyer fails to deposit the Earnest Money as required herein, and if such failure continues for a period of ten (10) days after written notice from Seller, then either Party may terminate this Contract by written notice to the other at any time prior to the deposit of the Earnest Money. If this Contract is so terminated, then this Contract shall be deemed to have terminated as of the date that the Earnest Money was originally to have been deposited by Buyer, and there shall be no remedy hereunder to either Seller or Buyer other than the termination of this Contract.

1.03.  **Defined Terms.** In addition to words and phrases defined elsewhere in this Contract, the following terms shall have the meanings set forth in this Section 1.03:

(a)  Applicable Law. The term *"Applicable Law"* means any city, county, state, federal, or other governmental regulation, ordinance, law, code, or statute, including any zoning ordinance or use restriction or any administrative, executive, or judicial orders, decrees, or determinations which govern, regulate, control, or otherwise apply to the use of the Property or development of the Land and Subdivision, including without limitation all Environmental Laws.

(b)  Business Days. The term *"Business Days"* means any day which is not a Saturday, Sunday, or a legal banking holiday.

(c)  City. The term *"City"* means the City of New Braunfels, Texas.

(d)  County. The term *"County"* means the County of Comal, Texas.

(e)  Effective Date. The term *"Effective Date"* means the later of the date of Seller's signature or Buyer's signature.

(f)  Environmental Laws. The term *"Environmental Laws"* means any local, state, or Federal law, rule or regulation pertaining to environmental regulation, contamination, clean-up or disclosure, including, without limitation each of the following, as the same may be amended from time to time: (i) the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6901 *et seq.*), as amended by the Used Oil Recycling Act of 1980, the Solid Waste Disposal Act Amendments of 1980, and the Hazardous and Solid Waste Amendments of 1984 (*"RCRA"*), and regulations promulgated thereunder; (ii) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §9601 *et seq.*), as amended by the Superfund Amendments and Reauthorization Act of 1986 (*"CERCLA"*), and regulations promulgated thereunder; (iii) the Toxic Substances Control Act (15 U.S.C. §2601 *et seq.*); (iv) the Endangered Species Act (15 U.S.C. §1531 *et seq.*); (v) laws, statutes, ordinances, rules, regulations, orders, or determinations relating to "wetlands", including without limitation those set forth in the Clean Water Act (33 U.S.C. §

2

1251 *et seq.*); (vi) the Texas Water Code; and (vii) the Texas Solid Waste Disposal Act (TEX. HEALTH & SAFETY CODE ANN. §§361.001-361.345).

    (g)    Governmental Authorities. The term "*Governmental Authorities*" means: the United States, the State of Texas, the County and City (if any) in which the Land is located or otherwise having jurisdiction over the Land, and/or Seller and Seller's or Buyer's development of the Land; any municipal utility district, water control and improvement district, electric co-op, or similar taxing authority in which the Land is located or otherwise having jurisdiction over Seller and Seller's or Buyer's development of the Land; and any agency, department, commission, board, or bureau of instrumentality of any of the foregoing, including without limitation the Federal Housing Administration ("*FHA*"), the Department of Veterans Affairs, the Army Corps of Engineers, the Federal Emergency Management Agency, the Environmental Protection Agency, and the Texas Commission on Environmental Quality.

    (h)    Hazardous Substances. The term "*Hazardous Substances*" means (i) any "hazardous waste" as defined by RCRA, and regulations promulgated thereunder; (ii) any "hazardous substance" as defined by CERCLA, and regulations promulgated thereunder; (iii) any toxic substance as defined under or regulated by the Toxic Substances Control Act; (iv) asbestos, polychlorinated biphenyls, radon, or explosive or radioactive materials; (v) underground and above ground storage tanks, whether empty, filled or partially filled with any substance, including without limitation any petroleum product or any other "hazardous substance"; (vi) any substance the presence of which on the Property is prohibited by any Environmental Laws; and (vii) any other substance which by any Environmental Laws requires special handling or notification of any Governmental Authority in its collection, storage, treatment, or disposal.

    (i)    Parties. The term "*Parties*" means the parties to this Contract, Seller and Buyer, and each may be referred to as a "*Party*".

    (j)    Restrictive Covenants. The term "*Restrictive Covenants*" means the deed restrictions, restrictive covenants, and/or declaration of covenants, conditions, and restrictions which shall be placed against and encumber the Lots.

    (k)    Title Company. The term "*Title Company*" means New Braunfels Title Company located at  243 S Seguin Ave., New Braunfels, TX 78130.

## II. SURVEY AND TITLE COMMITMENT.

    2.01.  **Existing Survey.**  Within ten (10) days following the Effective Date of this Contract, Seller shall provide to Buyer a copy of the most recent existing survey(s) of the Property ("*Existing Survey*") if in Seller's possession. In the event that any Existing Survey is updated or revised during the term of this Contract, or if any new surveys or subdivision plats covering the Property and/or Subdivision are obtained by Seller during the term of this Contract, Seller shall promptly provide a copy thereof to Buyer.

    2.02.  **New Survey.**  Within sixty (6)0 days after the Effective Date, Buyer shall, at Buyer's expense obtain a current on-the-ground survey (the "*Property Survey*") of the Property by a duly-licensed surveyor. The Property Survey shall be in a form acceptable to the Title Company in order to allow the Title Company to delete the survey exception (except as to

"shortages in area") from the Title Policy to be issued by the Title Company and shall otherwise meet the Survey Requirements below.

2.03. **Title Commitment**. Within thirty (30) days after the Effective Date, Seller will furnish to Buyer a commitment for title insurance at Buyer's sole cost and expense (the *"Title Commitment"*) covering all of the Land to be purchased by Buyer pursuant to this Contract in an amount equal to the total Purchase Price, issued by the Title Company together with legible copies of all instruments reflected as exceptions therein, including, but not limited to, any easements, restrictions, reservations, terms, covenants, or conditions which may be applicable to or enforceable against any of the Land. The Title Commitment will show Seller to be owner of good and indefeasible fee simple title to the Land and will contain the "standard printed exceptions".

2.04. **Review Period**. Buyer shall have fifteen (15) days (the *"Review Period"*) after receipt of the Title Commitment and legible copies of documents evidencing title exceptions, and the Existing Survey or Property Survey, in which to examine same and to deliver in writing to Seller such objections as Buyer may have to anything contained therein (*"Title Objections"*). Upon the expiration of the Review Period, Buyer shall be deemed to have accepted all exceptions to title to the Land as shown on the Title Commitment, except for the Title Objections.

2.05. **Cure Period**. If Buyer gives Seller notice of Title Objections, then Seller shall use commercially reasonable efforts to eliminate or modify such objectionable items to the reasonable satisfaction of Buyer within thirty (30) days (the *"Cure Period"*) after receipt of such notice of objections and to cause the Title Company to revise the Title Commitment to reflect such satisfaction or to provide Buyer and the Title Company with satisfactory evidence that Seller can and will cure such Title Objections prior to Closing (such matters, *"Committed Cure Exceptions"*).

(a)  Failure to Cure. In the event Seller has not cured, or chooses not to cure, Buyer's Title Objections within the Cure Period or fails to provide satisfactory evidence with respect to Committed Cure Exceptions, then Buyer may, at its option, and as Buyer's sole remedy, terminate this Contract as to all or any of the Land by written notice to Seller within fifteen (15) days after the end of the Cure Period. If this Contract is terminated, then all of the Earnest Money shall be returned promptly to Buyer. Neither Party shall thereafter have any further duties, rights or obligations hereunder with respect to any Land as to which this Contract is terminated. If Buyer does not terminate this Contract, then Buyer shall be deemed to have accepted any uncured Title Objections as Permitted Exceptions.

2.06. **Permitted Exceptions**. Any exceptions accepted by Buyer or to which Buyer does not timely object as required by Section 2.05 shall be hereafter collectively referred to as *"Permitted Exceptions"*. Possession of and title to the Land shall be delivered at the Closing of such Land free and clear of all matters except the Permitted Exceptions.

## III. FEASIBILITY PERIOD.

3.01. **Engineering and Feasibility Study**. For a period of One Hundred and Eighty (180) days commencing on the Effective Date (such period of time, the *"Feasibility Period"*) Buyer, at its expense, may conduct a feasibility study of the Property (including, without limitation, architectural, geotechnical, environmental, marketing, engineering and financial feasibility studies) to determine whether or not the Property is suitable to Buyer. In the event the feasibility study indicates, in Buyer's sole judgment and discretion, that the Property is not suitable to Buyer, Buyer shall send written notice to Seller on or before that date which is the last

4

day of the Feasibility Period.  If Buyer sends Seller the written notice of non-suitability on or before the last day of the Feasibility Period this Contract shall automatically terminate.  In the event of such automatic termination, the Earnest Money will be returned to Buyer as set forth in paragraph 1.02(b) above and the Parties shall have no further obligation to each other.  Not in limitation of the foregoing or any other provision in this Contract, Buyer may terminate this Contract at any time prior to the expiration of the Feasibility Period by giving written notice of such termination to Seller, and the Earnest Money will be returned to Buyer as provided in paragraph 1.02(b) above and the Parties shall have no further obligation to each other.

3.02.  **Seller Materials & Property Information**.  Seller shall, within fifteen (15) days after the Effective Date, provide access to or copies (in both electronic and hard copy if available) of all information and materials regarding the following (the "*Property Information*"):

(1)  all tax bills and notices of appraised value relating to the Property, including without limitation real property, personal property, and special assessment notices and property valuation statements for the current year and three (3) prior years;

(2)  copies of any agricultural, grazing, or other leases affecting all or any portion of the Property ("*Leases*");

(3)  copies of any and all title insurance policies covering or issued with respect to the Property (which may be redacted to delete the policy amount);

3.03.  **Buyer's Right to Enter Property**.  Buyer and its employees and agents shall have the right and permission from and after the Effective date of this Agreement, and so long as this Contract is in effect to enter upon the Property or any part thereof, at all reasonable times after a twenty-four (24) hour notice to Seller, for the purpose of completing its feasibility review of the Property which review may include, without limitation, making all soil, drainage, utilities, traffic, and other tests required for the completion of the engineering and feasibility study described in Section 3.01 above.  All of Buyer's inspections and studies must be conducted so as not to unreasonably damage or interfere with the Underlying Seller's or Seller's, as applicable, use of the Property, and will be performed at Buyer's sole expense.  Following the completion of Buyer's inspection and investigation of the Land, Buyer will restore, as close as reasonably practicable, those portions of the Land disturbed by Buyer's activities to substantially the same condition existing immediately prior to the commencement of Buyer's inspection and investigation, to the extent that such disturbance was caused by Buyer's inspection and investigation, at Buyers sole expense.  Buyer agrees to indemnify and hold Seller harmless from any claim or liability that may arise against Seller by reason of such investigations and that are not attributable to the acts, omissions, negligence, or willful misconduct of Seller, or their respective agents, employees, or contractors, including, but not limited to, injuries to and/or death of persons or damage to property arising from Buyer's activities.  Buyer will not permit any liens to attach to the Property by reason of the exercise of Buyer's rights under this Article III.  Buyer will indemnify Seller from and against any and all liens or claims by contractors, subcontractors, materialmen, consultants, or laborers performing work, trespassing, studies, or tests for Buyer and from and against any and all claims for damages by third parties arising out of the conduct of such work, studies, and tests and/or any other activities of Buyer under this Contract or related to the Property; provided, however, that the foregoing indemnity and hold harmless obligations will not apply to (a) any loss, liability, cost, or expense to the extent arising from or related to the acts or omissions of Seller, or their agents or consultants, to the extent that such acts or omissions are not resulting from Buyer's breach; (b) any diminution in value in the Property arising from or relating to matters discovered by Buyer during its investigation of the Property, (c) any latent defects in the Property discovered by Buyer, or (d) the release or spread of any hazardous substances that are discovered (but not deposited) on or under the Property by Buyer.

5

## IV. PROVISIONS WITH RESPECT TO CLOSINGS.

4.01.  **Closing.**  The Closing shall take place no later than thirty (30) days after the end of the Feasibility Period.

4.02.  **Seller's Obligations at Closing.**  At the Closing, Seller shall, at Seller's expense, take the following actions and deliver or cause to be delivered to Buyer or the Title Company, as applicable, the following:

(a)  Deed.  Execute and deliver to Buyer a general warranty deed duly executed and acknowledged by Seller, conveying to Buyer good and indefeasible fee simple title to all of the Land, free and clear of all liens, claims, and encumbrances except the Permitted Exceptions.

(b)  Assignment or Termination of Leases.  At the Closing, Seller shall, at Buyer's option, either (i) assign or partially assign to Buyer any Lease that Buyer has elected to assume and that affects the Property being purchased at such Closing, or (ii) terminate all Leases affecting the Property purchased by Buyer at such Closing.

(c)  Other Documents.  Seller shall execute and deliver such other documents as are customarily executed in Texas in connection with the sale of real property, including all required closing statements, evidences of authority to execute the documents, and any other instruments that may be required by the Title Company or by the express terms of this Contract.

(d)  Taxes.  Deliver tax certificates or other evidence that all ad valorem or other taxes for the Land have been paid for the years prior to the year of the Closing, and pay or escrow with the Title Company all taxes for the Land for the current year up to the date of Closing;

(e)  Possession.  Deliver possession of the Land purchased at Closing to Buyer;

(f)  Closing Costs.  Pay Seller's closing costs as hereinafter specified; and

(g)  Releases.  Cause to be secured from Seller's lender, or other holder of any note or lien on the Property, a properly-executed and recordable release or partial release of lien for execution and delivery simultaneously with the deed of the Property to Buyer, or as soon thereafter as is reasonably possible.

(h)  Title Policy.  Cause the Title Company to issue and advise Buyer that it has issued an owner's fee policy of title insurance (the *"Title Policy"*) in the amount of the Purchase Price, insuring fee simple, good and indefeasible title to the Property and right of access thereto in Buyer, containing no exceptions other than the Permitted Exceptions.

4.03.  **Buyer's Obligations at Closing.**  At the Closing, Buyer shall, at Buyer's expense, take the following actions and deliver or cause to be delivered to Seller or the Title Company, as applicable, the following:

(a)  Purchase Price.  Pay to Seller the applicable Purchase Price in cash for the Property at Closing.

(b)  Assignment of Leases.  At any Closing at which Buyer has elected to assume any Lease affecting the Property, Buyer shall execute an

6

instrument assuming all of Seller's rights, title and interest under such Lease being assigned.

(c)   Closing Costs.  Pay Buyer's closing costs as hereinafter specified.

(d)   Other Documents.  Buyer shall execute and deliver such other documents as are customarily executed in Texas in connection with the purchase of real property, including all required closing statements, evidences of authority to execute the documents, and any other instruments that may be required by the Title Company or by the express terms of this Contract.

4.04.  **Seller's Closing Costs.**  Seller shall pay the following costs and expenses in connection with Closing: (a) Seller's own attorney's fees; (b) Seller's portion of the prorated taxes and fees and any assessments (as provided below); (c) the cost of tax certificates mentioned above; and (d) such other incidental costs and fees customarily paid by Sellers in Comal County land transactions of this nature.

4.05.  **Buyer's Closing Costs.**  Buyer shall pay the following costs and expenses in connection with Closing: (a) Buyer's own attorney's fees; (b) Buyer's portion of the prorated taxes and fees (as provided below); (c) the cost of recording the general warranty deed; (d) the cost of any Title Company escrow fee; (e) the cost of the title policy premiums and for any additional endorsements or revisions to the standard exceptions in the Title Policy required by Buyer; and (f) such other incidental costs and fees customarily paid by purchasers in Comal County land transactions of this nature.

4.06.  **Prorations and Rollbacks**

A.   PRORATIONS:   Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

B.   ROLLBACK TAXES:   If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing..

### REPRESENTATIONS, WARRANTIES, & COVENANTS.

4.07.  **Seller's Representations & Warranties.**  Seller hereby makes the following representations and warranties, to the best of Seller's actual knowledge, with respect to the Closing, which shall also be true as of the Effective Date and as of the Closing, and which shall survive the Closing:

(a)   Seller has complied with all Applicable Laws and Legal Requirements relating to the Property;

(b)   There are no parties in possession of any portion of the Land as lessees, tenants at sufferance, or trespassers;

(c)   There is no pending or threatened condemnation or similar proceeding or special assessment affecting the Property, or any part thereof, nor, to the

7

actual knowledge of Seller, is any such proceeding or assessment contemplated by any Governmental Authority;

(d) There are no unpaid charges, debts, liabilities, claims, or obligations arising from the construction, occupancy, ownership, use, or operation of the Property, including without limitation any and all amounts due and owing to Seller's engineers, land planners, or other development consultants;

(e) Seller is not a "foreign person", as defined in recent amendments to the Internal Revenue Code and, at Closing under this Contract, Seller agrees to provide to Buyer an affidavit to that effect.

(f) At Closing, Buyer shall have good and ~~marketable~~ indefeasible title to the Property free and clear of all liens and encumbrances other than the Permitted Exceptions and upon purchase from Seller, Buyer shall acquire ownership of the entirety of interests in the Property.

(g) There has not been conducted by Seller, or its agents or employees any work which could result in the imposition of any mechanics', materialmen's, laborers' or similar statutory liens upon the Property;

(h) Seller has the full right and authority to consummate or cause to be consummated the purchase contemplated herein. This Agreement and all of the documents to be delivered by Seller at the Closing have been and will be authorized and properly executed and will constitute the valid and binding obligations of Seller, enforceable in accordance with their terms;

(i) There is no pending or threatened litigation or similar action affecting the Property or the Seller, nor to the best knowledge of Seller is any such litigation or action contemplated by any party, entity, or governmental authority.

4.08. **Seller's Covenants.** Seller hereby covenants and agrees with Buyer as follows:

(a) Immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Land or any portion thereof, or any other proceedings arising out of injury or damage to the Land or any portion thereof, Seller will notify Buyer of the pendency of such proceedings.

(b) Seller covenants and agrees to maintain all agricultural or open space exemptions applicable to the Property (or any portion thereof) during the term of this Contract, until such time as Buyer has either (i) purchased the Property (or applicable portion thereof) and has assumed any agricultural leases applicable thereto or (ii) agreed in writing to the termination by Seller of such agricultural or other exemption applicable to the Property or portion thereof.

4.09. **Buyer's Representations and Warranties.** Buyer hereby represents and warrants to Seller that Buyer has the full right, power, and authority to purchase the Property from Seller as provided in this Contract and to carry out its obligations hereunder; and all

8

required action necessary to authorize Buyer to enter into this Contract and to carry out its obligations hereunder has been or will have been taken prior to any Closing Date.

## V. ENVIRONMENTAL.

5.01.   **Representations and Warranties.** Seller hereby represents and warrants to Buyer that:   (i) neither Seller nor, to Seller's actual knowledge, any previous owner of the Property or any other person or entity has ever used, generated, processed, stored, disposed of, released or discharged any Hazardous Substance on, under, or about the Property or transported it to or from the Property, nor, to Seller's actual knowledge, has any party ever alleged that any such activities have occurred; and (ii) to the best of Seller's actual knowledge, no use by Seller, any prior owner of the Property, or any other person, has occurred which violates or has been alleged by any party to violate any applicable Environmental Law, and the Property is not on any "Superfund" list under any applicable Environmental Law, nor is it subject to any lien related to any environmental matter.

## VI. REMEDIES.

6.01.   **Seller's Remedies.** In the event that Seller shall fulfill all of Seller's obligations pursuant to this Contract and, should Buyer breach any term of this Contract, Seller shall be entitled, as Seller's sole and exclusive remedy, to (i) waive the contractual obligations of Buyer in writing; (ii) extend the time for performance by such period of time as may be mutually agreed upon in writing by the Parties; or (iii) terminate this Contract and retain or receive the Earnest Money then on deposit as liquidated damages for such default and not as a penalty, in which event the Parties shall be released herefrom and have no further rights, obligations, or responsibilities hereunder.

6.02.   **Buyer's Remedies.** If Seller defaults in performing Seller's obligations hereunder for any reason other than Buyer's default, or if Seller otherwise breaches any representation or warranty hereunder, then Buyer may (i) waive the contractual obligations of Seller in writing; (ii) extend the time for performance by such period of time as may be mutually agreed upon in writing by the Parties; (iii) terminate this Contract and receive a return of the Earnest Money then on deposit; (iv) prosecute an action against Seller for specific performance and recover from Seller all reasonable attorney fees and costs associated with such action

6.03.   **Attorneys' Fees.** In the event Seller or Buyer breaches any of the terms, provisions, warranties, representations, covenants, or agreements contained in this Contract and Seller and Buyer become involved in litigation with regard to breach hereof, the prevailing Party shall be entitled to be paid its reasonable attorneys' fees.

6.04.   **Limitation on Damages.** In no event shall either Party be liable to the other Party for (and each Party hereby waives all rights to) any speculative, consequential, or punitive damages for any breach of or default under this Contract or under any other provision of this Contract.

## VII. NOTICE AND RIGHT TO CURE.

Each Party shall be entitled to written notice of any default and shall have sixty (60) days after receipt of such notice to cure such default prior to the exercise of any remedy provided herein; provided, however, during the pendency of any default by Seller and any applicable cure period, Buyer's obligations to close the purchase of the Property in accordance with this Contract shall abate.   Seller agrees to cooperate with Buyer in any and all attempts by Buyer to cure any default within the default cure period.

## VIII. COMMISSION.

Seller and Buyer each hereby warrant and represent to the other that no brokers, agents, finders' fees or commissions, or other similar fees, are due or arising in connection with the entering into of this Contract, the sale and purchase of the Property, or the consummation of transactions contemplated herein. SELLER AND BUYER EACH HEREBY AGREE TO INDEMNIFY AND HOLD THE OTHER HARMLESS FROM AND AGAINST ALL LIABILITY, LOSS, COST, DAMAGE, OR EXPENSE (INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES AND COSTS OF LITIGATION) WHICH THE OTHER PARTY SHALL SUFFER OR INCUR BECAUSE OF ANY CLAIM BY A BROKER, AGENT, OR FINDER CLAIMING BY, THROUGH, OR UNDER SUCH INDEMNIFYING PARTY, WHETHER OR NOT SUCH CLAIM IS MERITORIOUS, FOR ANY COMPENSATION WITH RESPECT TO THE ENTERING INTO OF THIS CONTRACT, THE SALE AND PURCHASE OF THE PROPERTY, OR THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREIN.

## IX. NOTICE.

Except as provided below with respect to any notice authorized, required, or permitted to be given hereunder shall be deemed to have been given upon the depositing of such notice in the United States mail, postage prepaid, certified mail or registered mail, return receipt requested, and properly addressed to the Party to be notified at the following address:

If to Buyer:

_____

_____

_____

_____

With a copy to :

Joshua M. Henderson
Henderson, Brandt & Vieth, P.A.
360 E. Henry St., Ste. 101
Spartanburg, SC 29302
Phone: (864) 582-2962 ext. 108
Direct Dial: (864) 582-5202
Fax: (864) 583-1894

If to Seller:

Corrie Lea Fey
2681 CR 420,
Stockdale, Texas 78160

Kelvin Kramm
272 Kove Ln.
Cibolo, Tx 78108

Michael Kramm
P.O. Box 785
Marble Falls, Tx 78654

With Copy to:
Brently W. Free, LLC
Attn: Brently W. Free
755 Loop 337, Suite A
New Braunfels, TX 78130
Phone: 830-358-7432
Email: Brent@bfreelaw.com

(a)     Any Party may, from time to time and at any time, change its address by giving ten (10) days' written notice to the other Party of such change of address in the manner set forth above.

## X. MISCELLANEOUS PROVISIONS.

10.01. **Relationship of the Parties.**  Seller and Buyer agree as follows:

(a)     The Parties will each cooperate with each other, their employees, and agents to facilitate the purchase of Property by Buyer under the terms and conditions herein set forth.

(b)     Nothing contained herein is intended to create, nor shall it ever be construed to make, Seller and Buyer partners or joint venturers.

(c)     Unless otherwise specified in this Contract, any consent requested or required by one Party under the terms of this Contract shall not be unreasonably withheld or delayed by the other Party hereto.

10.02. **Condemnation.**   If condemnation proceedings are commenced against any portion of the Property prior to Closing, then Buyer may: (i) terminate this Contract, in whole or only with respect to the Property affected by the condemnation proceedings, by written notice to Seller within forty-five (45) days after Buyer is advised of the condemnation proceeding and the Earnest Money shall be refunded to Buyer; or (ii) appear and defend Buyer's interests in the condemnation proceeding and any award in condemnation shall, at Buyer's election, become the property of Seller and the Purchase Price for the Property shall be reduced by the same amount or the condemnation award shall become the property of Buyer and the Purchase Price for the Property shall not be reduced.

10.03. **Casualty.**  If any of the Property is damaged or destroyed before Closing, then Buyer may (i) terminate this Contract, in which case the Earnest Money shall be refunded to Buyer, or (ii) Buyer may elect to terminate this Contract within sixty (60) days of the Casualty event occurring as to some or all of the damaged Property, in which case the applicable portion of the Earnest Money will be refunded to Buyer, or (iii) Buyer may elect to extend this Contract

11

and allow Seller time to repair and restore the Property. In the case of a casualty impacting the Property, if Buyer elects to extend this Contract, then Buyer may set forth in a written notice to Seller a reasonable deadline by which any repair or restoration must be completed, and, if not completed by such deadline, then Buyer may resort to its other remedies under this Section.

10.04. **Survival of Contractual Provisions; Binding Effect**. Seller and Buyer agree as follows:

(a)     All of the representations, warranties, covenants, and agreements made by Seller and by Buyer shall survive the Closing and shall not be merged therein for the benefit of Buyer and Seller and their respective legal representatives, successors, and assigns.

(b)     Any covenant or agreement herein which contemplates performance after the time of Closing of the sale shall not be deemed to be merged into or waived by the instruments of the respective Closing, but shall expressly survive Closing and be binding upon the Parties obligated thereby.

(c)     The terms, provisions, warranties, representations, covenants, and agreements contained in this Contract shall apply to, be binding upon, and inure to the benefit of, the Parties and their respective legal representatives, successors, and assigns.

10.05. **Construction, Interpretation, and Severability**. Seller and Buyer agree as follows:

(a)     Time is of the essence in the performance of this Contract.

(b)     THIS CONTRACT SHALL BE GOVERNED AND INTERPRETED UNDER THE LAWS OF THE STATE OF TEXAS. VENUE FOR ANY LAWSUIT BROUGHT WITH RESPECT TO ANY CLAIM UNDER THIS CONTRACT SHALL BE IN COMAL COUNTY, TEXAS.

(c)     The section and paragraph headings used in this Contract are for convenience purposes only, and shall not be used in the interpretation of this Contract.

(d)     All exhibits attached hereto are incorporated herein by reference and made a part of this Contract.

(e)     This Contract contains the entire agreement between the Parties relating to the Property, and neither Party shall be bound by any verbal statement or agreement. This Contract cannot be varied except by written agreement executed by the Parties.

(f)     Failure of Buyer or Seller to insist in any one or more instances upon the performance of any of the covenants, agreements, and/or conditions of this Contract, or to exercise any right or privilege herein conferred shall not be construed as a waiver of any such covenant or condition.

(g)     The terms and provisions of this Contract are severable, and if any provision, term, or part hereof or the application thereof to any person or circumstances shall ever be held by any court of competent jurisdiction to be illegal, unenforceable, invalid, or unconstitutional for any reason, the remainder of this Contract and the application of such provisions or part hereof to other persons or circumstances shall not be affected thereby. This Contract and its interpretation and enforcement shall be affected only as to the application of any such items, terms, or provisions deemed

12

illegal, unenforceable, invalid, or unconstitutional, and this Contract shall in all other respects remain in full force and effect.

(h)   As used in this Contract, "days" shall mean and refer to calendar days. Not in limitation of the provisions below with respect to Permitted Deadline/Closing Days, if a deadline falls or notice is required on a Saturday, Sunday, or a legal banking holiday, then the deadline or notice shall be extended to the next calendar day which is a Business Day.

(i)    All provisions of this Agreement have been negotiated by both Parties at arm's length and neither party shall be deemed the scrivener of this Agreement. The rule of construction that ambiguities in a document will be construed against the party who drafted it will not be applied in interpreting this contract. Buyer and Seller acknowledge that (i) each Party has carefully read and understands the provisions of this Agreement, (ii) each Party has the right to seek independent legal advice at its own expense, and (iii) each Party has proposed modifications prior to signing the Agreement and has negotiated proposed modifications to the extent each Party deems necessary. Buyer and Seller represent and warrant that each Party has entered into this Agreement voluntarily and after consulting with whomsoever each Party desired.

10.06. **Miscellaneous Provisions**. Seller and Buyer agree as follows:

(a)   Except as otherwise expressly set forth in this Section 11.06(a), this Contract may only be amended, modified, or changed by a traditional written document properly executed by both Seller and Buyer. Such amendment may be transmitted by e-mail, facsimile, or other method permitted by the provisions for giving notice in this Contract.

(b)   This Contract may be executed in a number of identical counterparts which, taken together, shall constitute collectively one agreement; but in making proof of this Contract, it shall not be necessary to produce or account for more than one such counterpart. Additionally, (i) the signature pages taken from separate individually executed counterparts of this Contract may be combined to form multiple fully-executed counterparts; and (ii) a facsimile signature page or an electronically scanned signature page shall be deemed to be an original signature for all purposes. All executed counterparts of this Contract shall be deemed to be originals, but all such counterparts, when taken together, shall constitute one and the same agreement.

10.07. **Assignability**. Buyer may sell, assign, or transfer this Contract to a wholly owned entity of Buyer without the approval of Seller. Seller shall not assign its rights or obligations to any third party other than Seller's Lender, without prior written consent of Buyer, and any purported assignment shall be void and without effect.

IN WITNESS WHEREOF, the Parties hereto have executed this Contract in multiple copies, each of which shall be deemed to be an original, on the dates set forth below.

SELLER(S):

_____     DATE:_____
CORRIE LEA M. FEY

_____     DATE:_____
KELVIN H. KRAMM

_____     DATE:_____
MICHAEL C. KRAMM


BUYER:
ECS DEVELOPMENT, LLC

_____     9/5/18 ,2018
RYAN KAISER, MEMBER              DATE

14

## Title Company Receipts and Information

The undersigned Title Company hereby acknowledges receipt of a copy of this Contract.

TITLE COMPANY:

NEW BRAUNFELS TITLE COMPANY

Date:_____

By:_____
Name: _____
Title:_____

**Address**:     243 S Seguin Ave
                New Braunfels, TX 78130
                (830)-625-7553

     The undersigned Title Company hereby acknowledges receipt of the Earnest Money, and agrees to hold and dispose of the Earnest Money in accordance with the provisions of this Contract.

NEW BRAUNFELS TITLE COMPANY

Date:_____
By:_____
Name: _____
Title:_____

15





**PUBLIC WORKS**

November 5, 2020
John McClish
Brady & Hamilton * Womack McClish
1801 Lavaca, Suite 120
Austin, TX 78701

    Re: Kramm Family – proposed 1845 Subdivision

Dear Mr. McClish:

    This is in response to your letter dated October 13, 2020 concerning the removal of the County Line Road Minor Arterial from the City of New Braunfels Regional Transportation Plan and a rough proportionality analysis of the proposed 1845 Subdivision associated with the Kramm Family tract located on FM 1044. We also received your letter dated October 20, 2020 amending the State law required response from 14 days to 30 days.

    The City utilized the professional services of Jeff Whitacre, P.E. with Kimley-Horn and Associates, Inc. to conduct a rough proportionality analysis of the proposed 1845 Subdivision. Mr. Whitacre is a Texas Registered Engineer, License Number 102469. Mr. Whitacre prepared the enclosed Technical Memorandum concluding that the County Line Road Minor Arterial right-of-way dedication is roughly proportionate to the proposed 1845 Subdivision as presented to the City of New Braunfels. The proposed site plan, land use, and intensity were based on information provided with the letter request and additional information provided by K.C. Engineering, Inc. associated with a formal application received on October 22, 2020 to remove the County Line Road Minor Arterial from the City of New Braunfels Regional Transportation Plan. You may appeal the analysis in accordance with the City of New Braunfels Code of Ordnances Section 118-13.

    Your letter states that a "plat" of the proposed subdivision with the proposed future roadway superimposed was attached; however, the exhibit provided with the request represents a preliminary site plan that does not comply with the City's zoning and platting requirements. The tract is currently zoned agricultural/pre-development (APD) and the single-family lots shown on the preliminary site plan don't appear to meet the minimum standards. The engineers for the project are responsible to prepare plans, including a traffic impact analysis, that conform to the provisions of local codes and ordinances including platting requirements.

**EXHIBIT**

*C*

Kramm Family – proposed 1845 Subdivision
November 5, 2020
Page 2

The County Line Road Minor Arterial superimposed on the subject tract represents a generalized location and is subject to modification to fit local conditions and subject to refinement. Furthermore, the City is currently updating the Regional Transportation Plan and is proposing to reduce the right-of-way requirements of a minor arterial from 120 feet to 100 feet and may be applicable to the subject tract. This update is ongoing and planned for approval by City Council in 2021. Furthermore, modifications to the site plan, zoning of the tract, and other adjustments to the roadway network, drainage facilities, intersections, and access will allow for various development scenarios. An additional rough proportionality analysis can be conducted based on an alternate development plan.

As noted above, we have received a formal application to remove the County Line Road Minor Arterial from the Regional Transportation Plan. The request requires staff review and local and state agency coordination to prepare a recommendation. The recommendation will be presented to Planning Commission for a recommendation to City Council. City Council will consider the recommendation and make a determinate on the thoroughfare. We anticipate this process to take up to 90 days.

We are willing to work with the Kramm family and engineers for the tract to fully develop the site and meet the City's development requirements. Feel free to contact me if you have any questions.

Sincerely,

Garry Ford, Jr., PE
Assistant Public Works Director/City Engineer

Enclosures

cc:    Christopher J. Looney, AICP, Planning and Development Services Director
       Greg A. Malatek, PE, Public Works Director

# Kimley »Horn

**TECHNICAL MEMORANDUM**



11/4/2020

To: Garry Ford, P.E.
City Engineer
City of New Braunfels

From: Jeff Whitacre, P.E., AICP, PTP
Kimley-Horn and Associates, Inc.
TBPE Firm Number F-928

Date: November 4, 2020

Subject: Kramm Family Rough Proportionality Analysis
City of New Braunfels, Texas

## Purpose

On October 13, 2020 the City of New Braunfels (City) received a request for the City Engineer to conduct a rough proportionality analysis for the Kramm Family proposed 1845 Subdivision. Under Section 118-46 (b) (2) *"whenever a tract to be platted borders on or embraces any part of any street shown on the thoroughfare plan, such part of such proposed street shall be shown on the master plan or the plat."* The letter stated that a subdivision plan was submitted that did not comply with the Thoroughfare Plan after a previous meeting was held outlining this requirement. Currently a subdivision plan has not been submitted that complies with the Subdivision Platting requirements. However, the memo requests a proportionality analysis to be completed. For a rough proportionality assessment, a compliant plan should be presented to make an accurate determination. This determination will be made on the current submitted plan but should be revised once a compliant plan is submitted.

The purpose of this memorandum is to provide a "rough proportionality" calculation of the submitted Kramm Family proposed 1845 Subdivision. For roads, the rough proportionality calculation is a comparison of the capacity provided by a development to the traffic impacts of the proposed development.

## Proportionality Methodology

Traffic generation of new development impacts the area roadway system by using available capacity. To measure system impacts, an analysis using vehicle-miles of travel in the PM peak hour was conducted. Using the vehicle-miles of travel (demand), the cost of the provided by roadway improvements (supply) can be compared with the cost of traffic generated by a proposed development.

# Kimley»Horn

## Demand

Based upon information provided by the City from a March 16,2020 Traffic Impact Analysis (TIA) worksheet (submitted after the October 13, 2020 letter) the Kramm Family proposed 1845 Subdivision will ultimately consist of the following land use and intensity:

- 125 single-family detached housing
- 18,000 square feet of commercial

Based on the adopted 2019 Roadway Impact Fee Study the following are the vehicle-miles traveled generated by the proposed development:

- 125 dwelling units * 4.61 vehicle-miles/dwelling unit
  - 576.25 vehicle-miles
- 18.0 1,000 square feet * 8.03 vehicle-miles/1,000 square feet
  - 144.54 vehicle-miles

### TOTAL DEMAND: 650.04 vehicle-miles

The cost per vehicle-mile indicated in the 2019 Roadway Impact Fee Study is $1,371 per vehicle mile in Service Area 5.

- 720.79 vehicle-miles * $1,371/vehicle-mile

### TOTAL DEMAND:  $988,203.09

The total impact of the proposed development on the transportation network in the City of New Braunfels Service Area 5 is $988,203.09.

## Supply

Based upon information provided by the City of New Braunfels and the applicant, the Kramm Family proposed 1845 Subdivision is requested to dedicate the right-of-way for the County Line Road minor arterial extension and potentially build two-lanes of the roadway to serve the proposed development. The current Thoroughfare Plan illustrates 120' of right-of-way for County Line Road extension the while a proposed amendment shows 100' of right-of-way. This would result in 4.861 (211,745 sq. ft.) acres or 5.819 acres (253,475 sq. ft).

Based on the October 13, 2020 letter the land was approximately $1 per square foot, so the right-of-way request would be between $211,745 - $253,475 which is below the demand calculated.  Note Comal County Appraisal District shows a market value of $630,690 which is 63% of the value indicated in the October 13, 2020 letter.

# Kimley»Horn

The remaining $734,728.09 ($988,203.09 -$253,475).  would be available to the construction of the needed County Line Road extension to serve this development.  An updated site plan would need to be completed to evaluate this requirement.

**Analysis**

Based on information provided by the applicant in the March 16, 2020 preliminary drainage site plan, TIA worksheet and October 13, 2020 letter the request for right-of-way dedication ($253,475) is less than then demand of $988,203.09 and as a result is a roughly proportional request.

It is anticipated that if the alignment was properly drawn three areas would be created, 15.437 acres, 4.523 acre tract, and 0.769 acre tract.  The 0.769 acre tract is in the same location that was identified in the March 16, 2020 as a proposed water quality and detention pond and is anticipated could remain as such.  The commercial tract could remain and the remaining residential areas would be to be revaluated.

**Conclusion**

Based on the current information the request of the Kramm Family proposed 1845 Subdivision to dedicate right-of-way for the  County Line Road minor arterial extension as requested is roughly proportionate to this development.

This analysis should be updated based on a compliant site plan that considers this roadway based on the guidance that was previously provided.



### TECHNICAL MEMORANDUM



11/4/2020

To:      Garry Ford, P.E.
         City Engineer
         City of New Braunfels

From:    Jeff Whitacre, P.E., AICP, PTP
         Kimley-Horn and Associates, Inc.
         TBPE Firm Number F-928

Date:    November 4, 2020

Subject: Kramm Family Rough Proportionality Analysis
         City of New Braunfels, Texas

#### Purpose

On October 13, 2020 the City of New Braunfels (City) received a request for the
City Engineer to conduct a rough proportionality analysis for the Kramm Family
proposed 1845 Subdivision. Under Section 118-46 (b) (2) *"whenever a tract to
be platted borders on or embraces any part of any street shown on the
thoroughfare plan, such part of such proposed street shall be shown on the
master plan or the plat."* The letter stated that a subdivision plan was
submitted that did not comply with the Thoroughfare Plan after a previous
meeting was held outlining this requirement. Currently a subdivision plan has
not been submitted that complies with the Subdivision Platting requirements.
However, the memo requests a proportionality analysis to be completed. For a
rough proportionality assessment, a compliant plan should be presented to make
an accurate determination. This determination will be made on the current
submitted plan but should be revised once a compliant plan is submitted.

The purpose of this memorandum is to provide a "rough proportionality"
calculation of the submitted Kramm Family proposed 1845 Subdivision. For
roads, the rough proportionality calculation is a comparison of the capacity
provided by a development to the traffic impacts of the proposed development.

#### Proportionality Methodology

Traffic generation of new development impacts the area roadway system by
using available capacity. To measure system impacts, an analysis using vehicle-
miles of travel in the PM peak hour was conducted. Using the vehicle-miles of
travel (demand), the cost of the provided by roadway improvements (supply)
can be compared with the cost of traffic generated by a proposed development.

**EXHIBIT**

D

Kimley»Horn

**Demand**

Based upon information provided by the City from a March 16,2020 Traffic Impact Analysis (TIA) worksheet (submitted after the October 13, 2020 letter) the Kramm Family proposed 1845 Subdivision will ultimately consist of the following land use and intensity:

- 125 single-family detached housing
- 18,000 square feet of commercial

Based on the adopted 2019 Roadway Impact Fee Study the following are the vehicle-miles traveled generated by the proposed development:

- 125 dwelling units * 4.61 vehicle-miles/dwelling unit
  - 576.25 vehicle-miles
- 18.0 1,000 square feet * 8.03 vehicle-miles/1,000 square feet
  - 144.54 vehicle-miles

**TOTAL DEMAND: 650.04 vehicle-miles**

The cost per vehicle-mile indicated in the 2019 Roadway Impact Fee Study is $1,371 per vehicle mile in Service Area 5.

- 720.79 vehicle-miles * $1,371/vehicle-mile

**TOTAL DEMAND: $988,203.09**

The total impact of the proposed development on the transportation network in the City of New Braunfels Service Area 5 is $988,203.09.

**Supply**

Based upon information provided by the City of New Braunfels and the applicant, the Kramm Family proposed 1845 Subdivision is requested to dedicate the right-of-way for the County Line Road minor arterial extension and potentially build two-lanes of the roadway to serve the proposed development. The current Thoroughfare Plan illustrates 120' of right-of-way for County Line Road extension the while a proposed amendment shows 100' of right-of-way. This would result in 4.861 (211,745 sq. ft.) acres or 5.819 acres (253,475 sq. ft).

Based on the October 13, 2020 letter the land was approximately $1 per square foot, so the right-of-way request would be between $211,745 - $253,475 which is below the demand calculated. Note Comal County Appraisal District shows a market value of $630,690 which is 63% of the value indicated in the October 13, 2020 letter.

# Kimley»Horn

The remaining $734,728.09 ($988,203.09 -$253,475).  would be available to the construction of the needed County Line Road extension to serve this development.  An updated site plan would need to be completed to evaluate this requirement.

**Analysis**

Based on information provided by the applicant in the March 16, 2020 preliminary drainage site plan, TIA worksheet and October 13, 2020 letter the request for right-of-way dedication ($253,475) is less than then demand of $988,203.09 and as a result is a roughly proportional request.

It is anticipated that if the alignment was properly drawn three areas would be created, 15.437 acres, 4.523 acre tract, and 0.769 acre tract.  The 0.769 acre tract is in the same location that was identified in the March 16, 2020 as a proposed water quality and detention pond and is anticipated could remain as such.  The commercial tract could remain and the remaining residential areas would be to be revaluated.

**Conclusion**

Based on the current information the request of the Kramm Family proposed 1845 Subdivision to dedicate right-of-way for the  County Line Road minor arterial extension as requested is roughly proportionate to this development.

This analysis should be updated based on a compliant site plan that considers this roadway based on the guidance that was previously provided.

**PRELIMINARY OPINION OF**
**PROBABLE CONSTRUCTION COST FOR**
**MINOR ARTERIAL THROUGH KRAMM TRACT**
**NEW BRAUNFELS, TEXAS**

The Pay Item reference indicates the controlling specification for each Pay Item of K.C. Engineering, Inc. Standard Specifications (3rd Edition).  Pay Items containing a reference to TxDOT are from *Texas Department of Transportation Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges, 2014* .

Prepared By:
K.C. Engineering, Inc. - Firm Registration No. F-977

| PAY ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE IN NUMBERS | AMOUNT (Quantity x Unit Price) |
|---|---|---|---|---|---|
| | **GENERAL REQUIREMENTS** | | | | |
| 010.16.1 | SEQUENCE OF CONSTRUCTION | 1 | LS | $ 10,000.00 | $ 10,000.00 |
| 010.16.2 | FIELD ENGINEERING | 1 | LS | $ 20,000.00 | $ 20,000.00 |
| 010.16.3 | MOBILIZATION | 1 | LS | $ 20,000.00 | $ 20,000.00 |
| 010.16.4 | AS-BUILT DRAWINGS | 1 | LS | $ 3,300.00 | $ 3,300.00 |
| GEN. COND. ART. 5 | BONDS AND INSURANCE | 1 | LS | $ 10,000.00 | $ 10,000.00 |
| | **TOTAL GENERAL REQUIREMENTS** | | | $ | 63,300.00 |
| | **ROADWAY IMPROVEMENTS** | | | | |
| 102.4.2 | CLEARING AND GRUBBING | 22 | STA | $ 500.00 | $ 11,000.00 |
| TxDOT 260.6.2 | LIME TREATMENT (6") | 9,840 | SY | $ 3.00 | $ 29,520.00 |
| 106.4.1 | SUBGRADE PREPARATION (6") | 9,840 | SY | $ 3.00 | $ 29,520.00 |
| 200.5.1 | EXCAVATION | 3,280 | CY | $ 9.00 | $ 29,520.00 |
| 220.4.1 | EMBANKMENT | 1,640 | CY | $ 6.00 | $ 9,840.00 |
| 240.6.1 | FLEXIBLE BASE, 12" DEPTH, DENSITY CONTROLLED | 2,590 | CY | $ 45.00 | $ 116,550.00 |
| TxDOT 315 | PRIME COAT (MC-30 OR AE-P) | 8,640 | SY | $ 1.00 | $ 8,640.00 |
| 330.5.1 | CONCRETE CURB AND GUTTER | 4,320 | LF | $ 15.00 | $ 64,800.00 |
| TxDOT 531 | CONCRETE SIDEWALKS (5' WIDTH, 4" DEPTH) | 2,160 | LF | $ 25.00 | $ 54,000.00 |
| 410.12 | HOT MIX (TYPE C) (TxDOT ITEM 340) | 8,640 | SY | $ 12.00 | $ 103,680.00 |
| | **TOTAL ROADWAY IMPROVEMENTS** | | | $ | 457,070.00 |

**PRELIMINARY OPINION OF
PROBABLE CONSTRUCTION COST FOR
MINOR ARTERIAL THROUGH KRAMM TRACT
NEW BRAUNFELS, TEXAS**

The Pay Item reference indicates the controlling specification for each Pay Item of K.C. Engineering, Inc. Standard Specifications (3rd Edition). Pay Items containing a reference to TxDOT are from *Texas Department of Transportation Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges, 2014*.

Prepared By:
K.C. Engineering, Inc. - Firm Registration No. F-977

| PAY ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE IN NUMBERS | AMOUNT (Quantity x Unit Price) |
|---|---|---|---|---|---|
| | **DRAINAGE IMPROVEMENTS** | | | | |
| 600.5.1 | PIPE RCP CLASS III STORM SEWER MAIN - 24" | 1,100 | LF | $ 75.00 | $ 82,500.00 |
| 600.5.1 | PIPE RCP CLASS III STORM SEWER MAIN LATERAL - 18" | 176 | LF | $ 65.00 | $ 11,440.00 |
| 625.7.1 | CONCRETE JUNCTION BOX | 8 | EA | $ 4,000.00 | $ 32,000.00 |
| TxDOT 496 | 10' CURB INLET | 8 | EA | $ 5,000.00 | $ 40,000.00 |
| 1100.9.1 | TRENCH SAFETY, ALL DEPTHS | 1,276 | LF | $ 2.00 | 2,552.00 |
| | **TOTAL DRAINAGE IMPROVEMENTS** | | | $ | **168,492.00** |
| | **SIGNS, STRIPING & TRAFFIC CONTROL** | | | | |
| TxDOT 502 | BARRICADES, SIGNS, AND TRAFFIC HANDLING | 1 | LS | $ 10,000.00 | 10,000.00 |
| TxDOT 644 | INSTALL SMALL ROADSIDE SIGN, SUPPORTS, AND ASSEMBLIES | 5 | EA | $ 600.00 | 3,000.00 |
| TxDOT 666 | REFL PAV MRK TY I (Y) 4" (SLD) (100 MIL) | 4,320 | LF | $ 1.00 | 4,320.00 |
| TxDOT 666 | REFL PAV MRK TY I (Y) 4" (BRK) (100 MIL) | 540 | LF | $ 1.00 | 540.00 |
| TxDOT 672 | REFL PAV MRK TY II-A-A | 54 | EA | $ 5.00 | 270.00 |
| | **TOTAL SIGNS, STRIPING & TRAFFIC CONTROL** | | | $ | **18,130.00** |
| | **EROSION AND SEDIMENTATION CONTROL** | | | | |
| 900.5.1 | SILT FENCE | 900 | LF | $ 2.50 | 2,250.00 |
| 900.5.1 | SILT FENCE - REMOVE | 900 | LF | $ 1.00 | 900.00 |
| 905.5.1 | CONCRETE WASHOUTS | 1 | LS | $ 1,000.00 | 1,000.00 |
| 910.8.1 | REVEGETATION (TOPSOIL AND SEEDING) | 3,600 | SY | $ 3.00 | 10,800.00 |
| 920.3.1 | ROCK FILTER DAM, TYPE 2 | 40 | LF | $ 30.00 | 1,200.00 |
| 920.3.1 | ROCK FILTER DAM, TYPE 2 - REMOVE | 40 | LF | $ 10.00 | 400.00 |
| | **TOTAL EROSION AND SEDIMENTATION CONTROL** | | | $ | **16,550.00** |

PRELIMINARY OPINION OF
PROBABLE CONSTRUCTION COST FOR
MINOR ARTERIAL THROUGH KRAMM TRACT
NEW BRAUNFELS, TEXAS

The Pay Item reference indicates the controlling specification for each Pay Item of K.C. Engineering, Inc. Standard Specifications (3rd Edition). Pay Items containing a reference to TxDOT are from *Texas Department of Transportation Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges, 2014* .

Prepared By:
K.C. Engineering, Inc. - Firm Registration No. F-977

| PAY ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE IN NUMBERS | AMOUNT (Quantity x Unit Price) |
|---|---|---|---|---|---|
| | **MISCELLANEOUS WORK ITEMS** | | | | |
| 750.10.1 | LOCATING EXISTING UNDERGROUND FACILITIES | 1 | LS | $          5,000.00 | $          5,000.00 |
| | **TOTAL MISCELLANEOUS WORK ITEMS** | | | $ | **5,000.00** |
| | | | | | |
| | **TOTAL BID (TOTAL OF ITEMS IN THE COLUMNS ABOVE)** | | | $ | **728,542.00** |
| | **CONTINGENCY (~10%)** | | | $ | **72,858.00** |
| | **TOTAL BID (TOTAL OF ITEMS IN THE COLUMNS ABOVE)** | | | $ | **801,400.00** |

The unit prices contained herein are based upon recent availiable bidding data from TxDOT's Average Low Bid Unit Price for the Austin District, other bid histories, other information, and the opinions of the preparer. As such, these prices may not accurately reflect future bid prices because bidding trends change and opinions of probable cost reflect prior bidding history.

This document is released for the purposes of interim review under the authority of
**Greg Haley, P.E. 52292** on
**June 22, 2021**
It is not to be used for construction, bidding, permitting or for any other purposes.

The unit prices contained herein are based upon the judgment of K.C. Engineering, Inc. (KCE) As such, these prices may not accurately reflect future bid prices because bidding trends change and opinions of probable cost reflect prior bidding history. KCE cannot and does not warrant or represent that bids or negotiated prices will not vary from an estimate of construction cost or evaluation prepared or agreed to by KCE



**CITY OF NEW BRAUNFELS, TEXAS**
**CITY COUNCIL MEETING**

**CITY HALL - COUNCIL CHAMBERS**
**550 LANDA STREET**



**MONDAY, JUNE 28, 2021 at 6:00 PM**

Rusty Brockman, Mayor                    Lawrence Spradley, Councilmember (District 4)
Shane Hines, Councilmember (District 1)     Jason E. Hurta, Councilmember (District 5)
Justin Meadows, Mayor Pro Tem (District 2)   James Blakey, Councilmember (District 6)
Harry Bowers, Councilmember (District 3)          Robert Camareno, City Manager

**Please click the link below to join the webinar:**
**https://us02web.zoom.us/j/89332004990 or call (833) 926-2300**
**Webinar ID: 893 3200 4990**

**AGENDA**

**CALL TO ORDER**

**CALL OF ROLL: CITY SECRETARY**

**REQUEST ALL PHONES AND OTHER DEVICES BE TURNED OFF, EXCEPT EMERGENCY ON-CALL PERSONNEL.**

**INVOCATION: HINES**

**PLEDGE OF ALLEGIANCE & SALUTE TO THE TEXAS FLAG**

**PROCLAMATIONS:**

A)    The International Year of Caves and Karst                     21-616

**CITIZENS' COMMUNICATIONS**

This time is for citizens to address the City Council on issues and items of concerns not on this agenda.  There will be no City Council action at this time.

**PRESENTATIONS:**

A)    Notice of July 14th Meeting for Public Outreach for  21-588
       Development of the FY 2022 Street Maintenance Plan.
       *Greg Malatek, Public Works Director*

1.    **MINUTES**

A)    Discuss and consider approval of the minutes of the City  21-613
       Council meeting of June 14, and the Executive Session
       meeting of June 14.



EXHIBIT

E

Caitlin Krobot

2.   **CONSENT AGENDA**

*All items listed below are considered to be routine and non-controversial by the City Council and will be approved by one motion. There will be no separate discussion of these items unless a Councilmember or citizen so requests, in which case the item will be removed from the consent agenda and considered as part of the normal order of business.*

*Resolutions & Action Items*

A)   Approval of an amendment to an existing Memorandum   21-586
of Understanding between the City and New Braunfels
Utilities (NBU) for the for the payment of funds to NBU
for a temporary, part-time Watershed Educator position
at the Headwaters at the Comal.
Mark Enders, Watershed Program Manager

B)   Approval of the City of New Braunfels FY 2021 Second   21-525
Quarter Investment Report.
*Sandy Paulos, Assistant Chief Financial Officer*

C)   Approval for a purchase through Siddons-Martin   21-626
Emergency Group, LLC for a new stock fire engine built
by Pierce Manufacturing for an amount not to exceed
$725,000 and the appropriate budget amendment.
Patrick O'Connell, Fire Chief

*Ordinances*

*(In accordance with Section 3.10 of the City Charter, a descriptive
caption of each ordinance shall be read on two separate days.)*

D)   First reading of an ordinance regarding the requested   21-574
abandonment of a 0.366-acre portion of Tolle Street
Right-of-Way, located between South Gilbert Avenue
and the terminus of Tolle Street.
Christopher J. Looney, AICP; Planning and Development Services Director

E)   Approval of the second and final reading of an ordinance   21-614
establishing the number of positions in each
classification in the New Braunfels Fire Department and
Police Department pursuant to Local Government Code,
Chapter 143 as well as an increase to FY 2021 Adopted
Budget authorized position listing.
*Robert Camareno, City Manager*

F)   Approval of the second reading of an ordinance   21-633

providing the right to New Braunfels Utilities Board of Trustees Members to waive annual compensation and to revoke such waiver and reinstate annual compensation at any time.

Ian Taylor, chief Executive Officer, New Braunfels Utilities (NBU)

3.    INDIVIDUAL ITEMS FOR CONSIDERATION

A)    Public hearing and first reading of an ordinance 21-570 regarding the proposed rezoning of Lot 15 and a portion of Lot 14, Block A, Guada Coma Subdivision, addressed at 46 Guada Coma Drive, from "R-1A-6.6" Single-family District to "R-2A" Single-family and Two-family District.

Christopher J. Looney, AICP; Planning and Development Services Director

B)    Public hearing and first reading of an ordinance 21-571 regarding a proposed rezoning of approximately 60.1 acres out of the J. Thompson Survey, A-608 and William H. Pate Survey, A-259 located east of the intersection of FM 1044 and Michelson Lane, from "APD" Agricultural/Pre-Development District to "ZH-A" Zero Lot Line Home District.

Christopher J. Looney, AICP; Planning and Development Services Director

C)    Public hearing and first reading of an ordinance 21-573 regarding a proposed rezoning to apply a Type 2 Special Use Permit to adopt a site plan and establish development standards for an RV Resort on approximately 29 acres consisting of Lot 1D-R Walnut Heights Subdivision and approximately 25 acres out of the J. M. Veramendi A-2 Survey, located in the 700 block of N. Walnut Avenue.

Christopher J. Looney, AICP; Planning and Development Services Director

D)    Public hearing and first reading of an ordinance to revise 21-575 sections 144-1.3, Definitions, to define efficiency/studio apartments, and 144-5.1-3 Schedule of Required Spaces to identify parking standards for efficiency/studio apartments.

Jean Drew, AICP, CNU-A, Planning and Development Services Assistant Director

E)    Discuss and consider approval of a resolution of the City 21-628 of New Braunfels, Texas consenting to the creation of Comal County Water Improvement District Number 3,

located in the City's extraterritorial jurisdiction.
Jeff Jewell, Economic and Community Development Director

F)  Discuss and consider adoption of the Development 21-629
Agreement and associated exhibits for Comal County
Water Improvement District Number 3, which is in the
Extraterritorial Jurisdiction of the City
Jeff Jewell, Economic and Community Development Director

G)  Discuss and possible action of a sponsorship program 21-603
for the new Westside Branch of the New Braunfels
Public Library.
Gretchen Pruett, Library Director

H)  Second public hearing and possible direction to staff 21-605
regarding the U.S. Department of Housing and Urban
Development Community Development Block Grant
Annual Action Plan and its associated funding
recommendations for Program Year 2021.
Jennifer Gates, Grants Coordinator

I)  Public Hearing and the first reading of an Ordinance of 21-615
the City Council of the City of New Braunfels, Texas
Amending the Project Plan and Reinvestment Zone
Financing Plan for the Reinvestment Zone Number One,
City of New Braunfels, Texas; Approving a Second
Amendment to the Economic Development Agreement
Between the City of New Braunfels, Texas and A-L 95
Creekside Town Center, L.P.; and Other Matters in
Connection Therewith
Jared Werner, Chief Financial Officer

J)  Discuss and consider a waiver from Section 118-49(a) of 21-579
the Subdivision Platting Ordinance to allow an alternative
pedestrian access plan adjacent to existing Zipp Road
for the Highland Ridge Subdivision.
Christopher J. Looney, AICP; Planning and Development Services Director

K)  Public hearing and first reading of an ordinance 21-572
regarding a proposed rezoning to apply a Special Use
Permit to allow short term rental of a single-family
dwelling in the "C-3" Commercial District, addressed at
218 South Peach Avenue.
Christopher J. Looney, AICP, Planning and Development Services Director

L)     Discuss and consider a resolution to remove a segment <u>21-544</u> of the Minor Arterial identified in the City of New Braunfels Thoroughfare Plan that is the future extension of County Line Road from FM 1044 to Engel Road associated with the proposed 1845 Subdivision located at 1890 FM 1044.

Garry Ford, Assistant Public Works Director/City Engineer

M)     Appeal hearing for relief from apportionment of municipal <u>21-425</u> infrastructure costs associated with the proposed 1845 Subdivision located at 1890 FM 1044.

Garry Ford, Jr., Assistant Public Works Director/City Engineer

*NOTE: The City Council reserves the right to retire into executive session concerning any of the items listed on this Agenda whenever it is considered necessary and legally justified under the Open Meetings Act (Chapter 551 of the Texas Government Code).*

**ADJOURNMENT**

**CERTIFICATION**

I hereby certify the above Notice of Meeting was posted on the bulletin board at the New Braunfels City Hall.

_____

Caitlin Krobot, City Secretary

NOTE: Persons with disabilities who plan to attend this meeting and who may need auxiliary aids or services such as interpreters for persons who are deaf or hearing impaired, readers, or large print, are requested to contact the City Secretary's Office at 221-4010 at least two (2) work days prior to the meeting so that appropriate arrangements can be made.

# City of New Braunfels, Texas

*550 LANDA STREET*



## Minutes

### Monday, July 26, 2021

### 6:00 PM

## City Council

*Rusty Brockman, Mayor - present*
*Shane Hines, Councilmember (District 1) -present*
*Justin Meadows, Mayor Pro Tem (District 2) - present*
*Harry Bowers, Councilmember (District 3) – present*
*Lawrence Spradley, Councilmember (District 4) – present*
*Jason Hurta, Councilmember (District 5) – present*
*James Blakey, Councilmember (District 6) – excused absence*

The meeting was called to order by Mayor Brockman at 6:00 p.m. Councilmember Hines gave the invocation and Mayor Brockman led the Pledge of Allegiance and Salute to the Texas Flag.

## CITIZENS' COMMUNICATIONS

This time is for citizens to address the City Council on issues and items of concerns not on this agenda.   There will be no City Council action at this time.

**Easton Smith, Ryan Garcia, Wayne Rudolph, Pam Timmerman, David Gonzalez, and Jim Holster spoke during Citizens Comments.**

Monday, July 26, 2021 New Braunfels City Council Regular Meeting



## PRESENTATIONS:

A)      Retiree Recognition – Jose Castillo

**Mayor Brockman read the aforementioned caption.**

**Mike Mundell gave a moving tribute to Jose Castillo and gifted him with a personalized sign.**

B)      Presentation regarding proposed amendments to the City of New Braunfels Drainage
        and Erosion Control Manual and the Code of Ordinances, Chapter 58, Floods.

**Mayor Brockman read the aforementioned caption.**

**Melissa Reynolds presented this item.**

**The following individuals spoke on this item:   William Rogers, and Ryan Garcia.**

## 1.    MINUTES

A)      Discuss and consider approval of minutes of the City Council meeting of July 12, 2021
        and the Executive Session of July 12, 2021.

**Mayor Brockman read the aforementioned caption.**

**Councilmember Hines moved to approve this item.   Councilmember Bowers seconded the motion
which passed unanimously via roll call vote.**

## 2.    CONSENT AGENDA

*All items listed below are considered to be routine and non-controversial by the
City Council and will be approved by one motion. There will be no separate
discussion of these items unless a Councilmember or citizen so requests, in which
case the item will be removed from the consent agenda and considered as part of
the normal order of business. Citizens must be present to pull an item.*

*Resolutions & Action Items*

A)      Approval of the Mayoral appointment of Francisco Dionisio and Cheryl Denton and
        reappointment of Nathan Manlove and Mary Irwin to the New Braunfels Partnership
        Committee for terms ending August 1, 2024.

B)      Approval of the Mayoral appointment of Jacob Yaklin and reappointment of John
        Malik and Tobin Hoffmann to the Reinvestment Zone No. 1 (TIRZ) Board of Directors
        and the New Braunfels Development Authority for terms ending May 29, 2023.

C)   Approval of the Mayoral appointment of Tobin Hoffmann as the Chair of the Reinvestment Zone No. 1 (TIRZ) Board of Directors and the New Braunfels Development Authority.

D)   Approval of an annual software maintenance renewal for Cityworks PLL through SHI.

E)   Approval of the purchase of power system units through GTS, Inc. to support the networking and computing equipment in Fire Station 2, Fire Station 3 and the Police Department Headquarters.

F)   Approval of a lease agreement with Ricoh USA for the Citywide rental and services of multi-function copier devices through a BuyBoard cooperative agreement.

G)   Approval of and authorization for the City Manager to execute an amendment to lease agreement between the City of New Braunfels and Connections Individual and Family Services, Inc relating to the property located at 705 Comal Avenue.

H)   Discuss and consider approval for the City Manager to enter into a professional services agreement with Freese & Nichols, Inc. to update the City of New Braunfels Capital Improvement Plan.

I)   Approval for the purchase of pursuit vehicles from Caldwell County Chevrolet for the Department and approval to declare replaced units as surplus.

*Ordinances*
*(In accordance with Section 3.10 of the City Charter, a descriptive caption of each ordinance shall be read on two separate days.)*

J)   Approval of the second and final reading of an ordinance amending Section 126-346 of the City of New Braunfels Code of Ordinances to restrict parking around the landscaped islands on the outside edges of Main Plaza.

K)   Approval of the second and final reading of an ordinance amending Section 126-136 and Section 126-137 of the City of New Braunfels Code of Ordinances to create school speed zones on West Klein Road and South Walnut Avenue, respectively.

Mayor Brockman read the aforementioned consent items.

Councilmember Bowers moved to approve the consent agenda.   Councilmember Hurta seconded the motion which passed unanimously via roll call vote.

## 3.   INDIVIDUAL ITEMS FOR CONSIDERATION

A)   Discuss and Consider a Resolution Adopting a Tax Increment Financing Policy

Mayor Brockman read the aforementioned caption.

Jeff Jewell presented this item.

The following individuals spoke on this item: William Rogers, Lorie Schrank, and Ryan Garcia.

Mayor ProTem Meadows moved to approve this item. Councilmember Hurta seconded the motion which passed unanimously via roll call vote.

B)    Discuss and consider changes to the Bylaws of the Workforce Housing Advisory Committee

Mayor Brockman stated Item B had been pulled.

Mayor Brockman took a break at 7:25 p.m. and returned into session at 7:35 p.m.

C)    Discuss and consider approval of the appointment of one individual to the Airport Advisory Board for an unexpired term ending 5/12/2022.

Mayor Brockman read the aforementioned caption.

Caitlin Krobot presented this item.

Councilmember Hines moved to appoint Travis Krug to the unexpired term on the Airport Advisory Committee. Councilmember Bowers seconded the motion which was passed unanimously via roll call vote.

D)    Render decision on the petition for relief from apportionment of municipal infrastructure costs associated with the proposed 1845 Subdivision located at 1890 FM 1044.

Mayor Brockman read the aforementioned caption.

Garry Ford presented this item.

Mayor ProTem Meadows move to approve this item with staff recommendations. Councilmember Hurta seconded the motion which passed unanimously via roll call vote.

E)    Public hearing and first reading of an ordinance regarding a proposed rezoning of approximately 2.0 acres out of the Orilla Russell  Survey No. 2, A-485 addressed at 696 Orion Drive, from "APD AH" Agricultural/Pre-Development, Airport Hazard Overlay District to "ZH-A AH" Zero Lot Line Home, Airport Hazard Overlay District.

Mayor Brockman read the aforementioned caption.

Christopher Looney presented this item.

The following individuals spoke to this item: James Ingalls, Rex Michie, and Ryan Garcia.

Councilmember Hurta moved to approve this item. Councilmember Spradley seconded the motion which passed unanimously via roll call vote.

F)   Public hearing and first reading of an ordinance regarding the proposed rezoning of approximately 105 acres out of the A. M. Esnaurizar A-20 Survey, addressed at 1621 FM 758, from "APD AH" Agricultural/Pre-Development, Airport Hazard Overlay District to "ZH-A AH" Zero Lot Line, Airport Hazard Overlay District.

Mayor Brockman read the aforementioned caption.

Jean Drew presented this item.

The following individuals spoke to this item:   Carolyn McDonald, Matt Geistweist, Karen Davis, Tiffany Brown, Nicole Zuniga, and Pam Timmerman.

Mayor ProTem Meadows moved to approve this item.   Councilmember Hines seconded the motion which passed unanimously via roll call vote.

## 4.   EXECUTIVE SESSIONS

In accordance with Texas Government Code, Subchapter D, the City Council may convene in a closed session to discuss any of the following items; any final action or vote taken will be in public.

A)   Deliberate pending/contemplated litigation, settlement offer(s), and matters concerning privileged and unprivileged client information deemed confidential by Rule 1.05 of the Texas Disciplinary Rules of Professional Conduct in accordance with Section 551.071, of the Texas Government Code, specifically:
   • House Bill 1520

*NOTE: The City Council reserves the right to retire into executive session concerning any of the items listed on this Agenda whenever it is considered necessary and legally justified under the Open Meetings Act (Chapter 551 of the Texas Government Code).*

## 5.   RECONVENE INTO OPEN SESSION AND TAKE ANY NECESSARY ACTION RELATING TO THE EXECUTIVE SESSION AS DESCRIBED ABOVE.

No action was taken at this time.

## ADJOURNMENT

Mayor Brockman adjourned at 8:33 p.m.

Rusty Brockman, Mayor

Caitlin Krobot, City Secretary

EXHIBIT "B"




RECEIVED
OCT 0 7 2021
BY:

**CITATION BY MAILING**
**THE STATE OF TEXAS**
**CAUSE NO. C2021-1371A**

TO:  RUSTY BROCKMAN
The City of New Braunfels, Texas
550 Landa Street
New Braunfels TX  78130

NOTICE TO RESPONDENT: "You have been sued.  You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and ORIGINAL Petition, a default may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org". A copy of petition accompanies the citation in cause number: C2021-1371A styled:

**Corrie Lea M. Fey; Kelvin H. Kramm; Michael C. Kramm**
**VS.**
THE CITY OF NEW BRAUNFELS, TEXAS

filed in said 22nd District Court on the 25th day of August, 2021 day of.

Issued and given under my hand and seal of said court at office, this day of  5th day of October, 2021 A.D.

HEATHER N. KELLAR
DISTRICT CLERK OF COMAL COUNTY, TEXAS
199 Main Plaza, Suite 2063
NEW BRAUNFELS, TEXAS 78130

BY: _____ ,Deputy
Sarah Abrego

CERTIFICATE OF DELIVERY BY MAIL

| | Name & Address | Date Signed | By Whom |
|---|---|---|---|
| | | | |

ATTACH
RETURN RECEIPT
WITH
ADDRESSEE'S
SIGNATURE

9171 9690 0935 0235
8516 96

AS EVIDENCED BY THE SIGNED RETURN RECEIPT ATTACHED HERETO AND INCORPORATED IN THE RETURN.
NOT EXECUTED AS TO THE FOLLOWING REASON:
_____

TO CERTIFY WHICH WITNESS MY HAND OFFICIAL
HEATHER N. KELLAR, DISTRICT CLERK

BY: _____ , DEPUTY
Sarah Abrego

FEE: $ _____

Exhibit B

9171 9690 0935 0235 8516 96

EXHIBIT "C"

## My Services

Profile    Print    Guide    Export

| Equipment | Reports | Tracking | Supplies |

Home  >  Tracking  >  Status History

**Status History ?**

FILED FOR RECORD
At __1:10__ o'clock __A__ M

OCT 1 4 2021

HEATHER N. KELLAR
CLERK DISTRICT COURT
COMAL COUNTY, TEXAS
BY_____DEPUTY

### Tracking Number Information

| | | | |
|---|---|---|---|
| **Meter:** | 12203431 | **Mailing Date:** | 10/05/21 02:29 PM |
| **Tracking Number:** | 9171969009350235851696 | **Sender:** | DC C2021-1371A |
| **Current Status:** | OK : Delivered | **Recipient:** | |
| **Class of Mail** | FC | **Zip Code:** | 78130 |
| **Service:** | ERR | **City:** | CANYON LAKE |
| **Value** | $2.960 | **State:** | TX |

**Proof of Delivery**

### Status Details

| ▼ Status Date | Status |
|---|---|
| Thu, 10/07/21, 11:06:00 AM | OK : Delivered |
| Wed, 10/06/21, 05:23:00 PM | Processed (processing scan) |
| Tue, 10/05/21, 10:01:00 PM | Dispatched from Sort Facility |
| Tue, 10/05/21, 08:03:00 PM | Processed (processing scan) |
| Tue, 10/05/21, 06:48:00 PM | Origin Acceptance |
| Tue, 10/05/21, 06:27:00 PM | OK: USPS acknowledges reception of info |

Note: Delivery status updates are processed throughout the day and posted upon receipt from the Postal Service.

EXHIBIT "D"

FILED
C2021-1371A
11/1/2021 12:00 AM
Heather N. Kellar
Comal County
District Clerk
Accepted By:
Sarah Abrego

**CAUSE NO. C2021-1371A**

| | | |
|---|---|---|
| CORRIE LEA M. FEY, | § | IN THE DISTRICT COURT OF |
| KELVIN H. KRAMM, and | § | |
| MICHAEL C. KRAMM, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | COMAL COUNTY, TEXAS |
| v. | § | |
| | § | |
| THE CITY OF NEW BRAUNFELS, | § | |
| TEXAS, | § | |
| | § | |
| *Defendant*. | § | 22nd JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

TO THE HONORABLE DISTRICT COURT:

Now comes the City of New Braunfels, Texas (the City), Defendant in this case, and files this original answer to Plaintiffs Corrie Lea M. Fey, Kelvin H. Kramm, and Michael C. Kramm's original petition. In support of this answer, the City states the following:

### 1. GENERAL DENIAL

1.01. In accordance with Rule 92 of the Texas Rules of Civil Procedure, the City exercises its legal right to require Plaintiffs to prove all of the allegations contained in their pleading. Accordingly, Defendant generally denies the allegations of Plaintiffs' pleading and demands strict proof of the allegations by a preponderance of the credible evidence.

### 2. AFFIRMATIVE DEFENSES

2.01. Pursuant to Rule 94 of the Texas Rules of Civil Procedure, the City asserts and affirmatively pleads that it is absolutely immune from liability to Plaintiffs under the common law doctrine of sovereign or governmental immunity, as partially waived by the Texas Tort Claims Act, Chapter 101 of the Texas Civil Practice & Remedies Code, to the extent applicable.

*Defendant's Original Answer*                                                                 Page 1

Exhibit D

2.02. Pursuant to Rule 94 of the Texas Rules of Civil Procedure, the City asserts that: (1) there is a legitimate governmental purpose to support the imposition of the complained-of condition; (2) there is an essential nexus between the legitimate governmental interest and the condition; and (3) there is rough proportionality between the condition imposed and the impacts of the proposed development.

2.03.   Pursuant to Rule 94 of the Texas Rules of Civil Procedure, the City asserts and affirmatively pleads that if Plaintiffs prevail on any exaction claim under *Nollan* and *Dolan* any damages award (i.e., costs determined in excess of what is roughly proportional) must be offset by the amount of any special benefit the complained-of required dedication or improvements (i.e., any amount the improvement or dedication will enhance the fair market value of Plaintiff's property). *Town of Flower Mound v. Stafford Estates, L.P.*, 71 S.W.3d 18, 46 (Tex. App.—Fort Worth 2002), *aff'd*, 135 S.W.3d 620 (Tex. 2004).

## 3.  SPECIFIC DENIAL

3.01.   Plaintiffs allege the City's actions violate the Texas Private Real Property Rights Preservation Act. This act does not apply is this case because the subject property is located within the City's boundaries. Tex. Gov't Code Ann. § 2007.003(a)(3), (b)(1) (West).

## 4.  PRAYER

4.01.  For the reasons stated, the City requests Plaintiffs take nothing by reason of their suit, and that costs of court be taxed against Plaintiffs.

Respectfully submitted,

**Taylor, Olson, Adkins, Sralla, & Elam, L.L.P.**
401 E. Sonterra Boulevard Suite 375
San Antonio, Texas 78258
Phone: 210-510-4146
Fax: 817-332-4740

William M. "Mick" McKamie
mmckamie@toase.com
Texas Bar No. 136868001

**Taylor, Olson, Adkins, Sralla, & Elam, L.L.P.**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Tel: (817) 332-2580
Fax: (817) 332-4740

Fredrick "Fritz" Quast
fquast@toase.com
Texas Bar No. 24032974

Lindsey Hale
lhale@toase.com
Texas Bar No. 24096435

**ATTORNEYS FOR DEFENDANT,**
**THE CITY OF NEW BRAUNFELS, TEXAS**

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing answer has been served on the following counsel of record for Plaintiffs through the electronic filing manager and by email in accordance with Rule 21a(a)(1) or (2) the Texas Rules of Civil Procedure on this 31st day of October 2021.

John McClish
email:  john@bhlawgroup.com
Zachary S. Brady
email:  zach@bhlawgroup.com
Laura W. Pratt
email:  laura@bhlawgroup.com
Brady & Hamilton Womack McClish
805 East 32nd Street, Suite 200
Austin, Texas 78705

Fredrick "Fritz" Quast

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Fredrick Quast on behalf of Fredrick Quast
Bar No. 24032974
fquast@toase.com
Envelope ID: 58698760
Status as of 11/1/2021 9:36 AM CST

Associated Case Party: CorrieLea M.Fey

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John McClish | | john@bhlawgroup.com | 10/31/2021 7:09:30 PM | SENT |

Associated Case Party: The City of New Braunfels, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lindsey Hale | | lhale@toase.com | 10/31/2021 7:09:30 PM | SENT |
| Rebecca Meek | | rmeek@toase.com | 10/31/2021 7:09:30 PM | SENT |
| William M. McKamie | | mmckamie@toase.com | 10/31/2021 7:09:30 PM | SENT |
| Fredrick "Fritz" Quast | | fquast@toase.com | 10/31/2021 7:09:30 PM | SENT |